# Richmond.

KARN & HICKSON v. RORER IRON COMPANY.

APRIL 3d, 1890.

1. RECEIVER—*Certificates.*—A court of equity may appoint a receiver for corporate property under its charge as a fund to pay incumbrances, and to authorize him to issue certificates to raise money upon (necessary to manage and preserve) the property, and to make same first liens thereon.

2. IDEM—*Compensation.*—Where the master reports a compensation for receiver as fair and reasonable, and same is sustained by competent evidence, this court will not interfere.

3. SALE DECREED—*Grounds for annulling.*—Where no objection was made below to decree of sale before liens were ascertained, such exception cannot be made here. Where sale is confirmed without objection, it is presumable the property brought its full value. Where sale is made under a decree, it is not necessary that it should be advertised as directed in the trust deed. Where sale is decreed in a creditor's suit, it matters not that the creditor who brought the suit has parted with his interest before the decree, as all the creditors are deemed plaintiffs. After sale is confirmed, it will not be set aside, except for fraud, mistake or surprise, or like causes.

4. CONDEMNATION OF LAND—*Payment of price.*—Where necessary for the company's purposes, it was not error for the court below to condemn the reversion of land where it owned the life estate, and to use part of the proceeds of the certificates to pay therefor; and if not necessary, it was too late to raise the objection here for the first time.

5. PETITION TO REHEAR—*Res judicata.*—Notwithstanding the rejection of a previous irregular and defective petition for a rehearing, it was error in the court below to reject a regular and sufficient petition filed for the same purpose, and setting forth that an abatement of the vendor's lien should be made to the extent of the failure of title to part of the land growing out of a decision of this court in another suit, the rejection of the former petition not rendering the matter *res judicata.*

Appeal from decree of hustings court of city of Roanoke rendered in the cause wherein G. M. Bartholomew and others, creditors of the Rorer Iron campany, were complainants, and the said company and others were defendants. Karn & Hickson, first-mortgage bondholders, brought the case here on appeal. Opinion states the case.

*Scott & Dupuy* and *Phlegar, Berkeley & Johnson,* for the appellants.

*Penn & Cocke,* for the appellees.

*W. J. Robertson* and *A. C. Denniston,* for trustees of the Virginia mineral trusts.

LEWIS, P., delivered the opinion of the court.

This was a creditors' suit in the hustings court of Roanoke City against the Rorer Iron company and others, for the appointment of a receiver, and to have the property of the defendant iron company subjected to the payment of its debts.

It appears that on the 25th day of January, 1883, the company executed a deed of trust on certain mineral lands, situate about six miles south of Roanoke City, which it had previously acquired by purchase, to secure the payment of ninety thousand dollars of bonds issued by the company. Subsequently the company acquired a right of way from its mines on the said lands to a point within the limits of the said city, upon which, pursuant to authority conferred by its charter, it constructed a railway for the transportation of its ores to a point of connection with the Norfolk & Western railroad. It also acquired for its terminus and other purposes, twenty-nine acres of land in Roanoke City by purchase from one J. W. Webb; and afterwards, on the 1st day of July, 1884, it executed a second deed of

trust on *all* of its property, including the mineral lands embraced in the first deed of trust, to secure an issue of two hundred thousand dollars of its bonds.

At the time these deeds were respectively executed, there was a vendor's lien on the mineral lands, in favor of M. P. Preston, which at the time the bill was filed amounted to something over $5,000, and on the Webb land there was a similar lien for about the same amount, both of which liens are paramount to the deeds of trust.

The bill was filed in May, 1866, by George M. Bartholomew, president of the company, and trustee in the two deeds of trust, and also, as he alleged in the bill, the owner by assignment of the Preston and Webb liens. The bill alleges that the company is in default; that its railroad bridge across the Roanoke river had then recently been swept away by floods; that the company was unable to rebuild it, and that in consequence the operations of the company had ceased, and its property was lying idle and liable to greatly deteriorate and to be scattered and wasted, unless the court should appoint a receiver, etc. And the prayer of the bill, among other things, was that for the purpose of raising funds with which to rebuild the bridge, and for other necessary purposes, the receiver, when appointed, be authorized to issue receiver's certificates, to be declared a lien on all the property of the company prior to the deeds of trust above mentioned.

The court appointed a receiver of all the property, rights, and franchises of the company, with authority to operate the mines, and to carry on the business of the company under the supervision of the court. The receiver was also authorized to issue receiver's certificates to an amount aggregating eleven thousand dollars, which on their face are declared to be a lien on all the property and assets in the receiver's hands. The decree authorizing them does not in express terms declare that these certificates shall constitute a lien paramount to the deeds

of trust, but such is the effect of the decree, construing it, as it must be, construed in connection with the prayer of the bill on that subject.

The proceeds of the certificates were used in rebuilding the bridge across Roanoke river, in paying taxes, in defraying the cost of certain condemnation proceedings, and for other necessary purposes, the chief object of which was to put the property in a salable condition. In due time a sale of the property was ordered, and sale was made, the commissioners of sale reporting that the property had been sold for $35,000. The sale was confirmed without objection, and a deed made to the purchasers, under a decree of the court, pursuant to the provisions of sections 1233 and 1234 of the Code.

Out of the fund arising from the sale the court ordered the following payments to be made, viz:

1. An amount sufficient to pay the costs of suit, the fees of the master, and of the receiver for his services.

2. The cost of the condemnation proceedings.

3. And the court, being of opinion that the property conveyed by the first deed of trust was of equal value with that conveyed by the second, exclusive of the property embraced in both deeds, ordered that the residue of the fund be divided into two moieties; and out of the first moiety it was ordered that the Preston lien and one-half of the receiver's certificates be paid, and the balance paid to the first mortgage (or deed of trust) bondholders. Out of the second moiety it was ordered that the Webb lien and the other half of the receiver's certificates be paid, and the balance to go to the second mortgage (or deed of trust) bondholders.

The appellants, Karn & Hickson, first mortgage bondholders, assign various errors in the proceedings in the lower court. Their first objection is that the amount of compensation allowed the receiver—namely, $3,375—for twenty-one months' service is excessive. As to this objection, it is sufficient to say that the sum allowed was reported by the master as fair and

reasonable, and his finding is abundantly sustained by the uncontradicted evidence of Joseph H. Sands, general manager of the Norfolk & Western railroad company, and other competent and experienced men in such matters, whose testimony on the point was taken.

The next objection is that no part of the receiver's certificates or the cost of the condemnation proceedings ought to have been charged against the fund derived from the sale of the property conveyed by the first deed of trust, because, as is contended, the proceeds of the certificates were used in the improvement of the property acquired by the defendant company after the execution of that deed.

This objection, also, is fully met and obviated by the evidence upon which the lower court acted. By the destruction of its railroad bridge the properties of the company were separated, thus rendering it impossible, until the bridge was replaced by another, to operate the mines or to transport the ores taken from the mines to a point from which they could be marketed or utilized in any way. The evidence shows, moreover, that without the railroad the mineral property had no marketable value. Indeed, that the two properties were mutually dependent—that the one had no " commercial value " without the other, and that both were equally benefited by the expenditures that were made in rebuilding the bridge and in acquiring a perfect title to a part of the road-bed by the condemnation proceedings that were had.

As to the receiver's certificates, we do not doubt that it was competent for the court to authorize their issue and to make them a lien paramount to the deeds of trust. It was necessary to raise money in some way to preserve the property from destruction or serious injury, and to put it in saleable condition, and the only practicable mode of accomplishing that object was by issuing receiver's certificates. No objection to the granting of the authority to issue the certificates was made in the court below, although, as we have seen, the bill prayed

that such authority be granted.   It is now well settled that a court of equity has the power in this class of cases to authorize its receiver to issue certificates upon which to raise money when the necessities of the particular case require it, and to make them a first lien on the property in its hands, and the authority, when properly exercised, is highly beneficial to the mortgage bondholders, yet it ought to be cautiously and sparingly exercised.

The remarks of Mr. Justice Bradley in *Wallace* v. *Loomis*, 97 U. S., 146, are applicable to the present case.   Speaking for the court he said : " The power of a court of equity to appoint managing receivers of such property as railroads, when taken under its charge as a trust fund for the payment of incumbrances, and to authorize such receivers to raise money necessary for the preservation and management of the property, and make the same chargeable as a lien thereon for its repayment, cannot, at this day, be seriously disputed.   It is a part of that jurisdiction, always exercised by the court, by which it is its duty to protect and preserve the trust fund in its hands.   It is, undoubtedly, a power to be exercised with great caution; and, if possible, with the consent or acquiescence of the parties interested in the fund.   In the present case, it appears that the parties most materially interested, either expressly consented to the order or offered no objection to it." See also, *Union Trust Co.* v. *Ill. Midland Co.*, 117 U. S., 434 ; *Gibert* v. *W. C. V. M. & G. S. R. R. Co.*, 33 Gratt., 586 ; *Meyer* v. *Johnston*, 53 Ala., 237; Jones, R'd Securities, sec. 540 ; Beach, Receivers, sec. 379, *et seq.*

The appellants, Karn & Hickson, also object to the sale that was made, on three grounds, which, as set forth in their supplemental assignment of errors, are as follows : (1) " It was error to decree a sale before the liens were ascertained; (2) It was error to decree a sale without requiring the sale to be advertised as the deed of trust prescribed; and (3) It was error to

decree a sale at the suit of one who had no claim against the property." ·

None of these assignments are well taken. The first is not well taken, *first*, because no such objection was made before the sale was made, or at any time in the court below; *secondly*, because the presumption is that the property brought its full value, as the sale was confirmed without objection by any one; and there is no evidence that any party has been injured; and, *thirdly*, because the established doctrine of this court is, that after a judicial sale has been absolutely confirmed by the court which ordered it, it will not be set aside, except for fraud, mistake, surprise, or other cause for which equity would grant like relief if the sale had been made by the parties in interest, instead of by the court; and nothing of the kind is either alleged or proven in the present case. *Berlin* v. *Melhom*, 75 Va., 639; *Langyher* v. *Patterson*, 77 *Id.*, 470; *Va. Fire & Marine Ins. Co.* v. *Cottrell*, 85 Va., 857.

This is also a sufficient answer to the two remaining assignments of error just mentioned. It is proper to say, however, that the property was not sold under the deeds of trust, but by the court in the exercise of its general jurisdiction in a creditor's suit; and this being so, it makes no difference that when the decree of sale was entered, the plaintiff by whom the suit was brought had parted with his claims against the defendant company, and was no longer interested in the suit, for when a general account is ordered in a creditor's suit, it is for the benefit of all the creditors, and the case thereupon ceases to be under the control of the party who instituted it. *Simmons* v. *Lyles*, 27 Gratt., 922; *Piedmont & Arlington Life Ins. Co.* v. *Maury*, 75 Va., 508.

We are also of opinion that there is no error in the action of the lower court with respect to the six acres of the Webb land, as to which there was a failure of title. The land, in the opinion of the lower court, was necessary for the purposes of the company, and there was no error in condemning the rever-

sion in it, as was done, and paying Webb's administrator for the life estate therein. Besides, no objection to the condemnation proceeding was made in the court below; and as the land, the title to which was thus acquired, was sold and conveyed to the purchasers, along with all the other property and effects of the defendant company, it is too late to raise the objection in the appellate court.

The only remaining assignment of error relates to the action of the hustings court in refusing to rehear, upon the petition of the appellants, the decree of September term, 1887, with respect to what is called the "Preston lien," which is the vendor's lien on the mineral lands already referred to. As to these lands, there has been a partial failure of title, growing out of the decision of this court in the case of *Rorer Iron Co.* v. *Trout*, decided in June, 1887, and the appellants, in their petition for a rehearing, contended, as they now contend, that the vendor's lien ought to be abated to the extent of the value of the interest thus lost. The interlocutory decree of September term, 1887, fixing the amount of the lien, was rendered about ninety days after the decision of this court just mentioned; and the appellants not being parties to the suit in which that decision was rendered, filed an affidavit with their petition for a rehearing, to the effect that they had no knowledge of the decision of this court, and could not, by the use of reasonable diligence, have had knowledge thereof, at the time the decree of the said September term was rendered. The hustings court, however, by its decree of July 11th, 1888, refused leave to file the petition, whereupon this appeal was taken.

We are of opinion that leave to file the petition ought to have been granted, notwithstanding a previous petition filed by the appellants to rehear the same decree had been rejected on the ground that it was not accompanied by an affidavit, and because it gave no explanation of why the matters set up had not been brought to the attention of the court before the decree of September term, 1887, was rendered. The rejection of that

petition was not an adjudication, rendering the matter *res judicata,* in the sense contended for by the appellees. Even a final decree dismissing a bill in equity, when made, because of some defect in the pleadings, or upon some other ground not going to the merits of the case, is not a final determination, which bars a renewal of the litigation in proper form. 1 Herm. Estop., sec. 403; *Durant* v. *Essex Company,* 7 Wall., 107; *W. & O. R. R. Co.* v. *Cazenove,* 83 Va., 744. And therefore, without passing upon the merits of the petition, as the case is not in a situation to enable us to do so, we are of opinion to reverse the decree of July 11th, 1888, in the particular mentioned, and in all other respects to affirm the action of the hustings court.

Reversed in part and affirmed in part.