OLDROYD, Land Com'r v. McCREA, Judge, et al.

No. 4229.   Decided March 31, 1925.   (235 P. 580.)

1.   PLEADING—CERTAIN ALLEGATIONS IN PETITION BY MORTGAGE
    LIENOR FOR WRIT OF PROHIBITION TO RESTRAIN SALE OF PROPERTY
    OF INSOLVENT CORPORATION STRICKEN.   In petition by mortgage
    lienor for writ of prohibition to restrain sale of property of
    insolvent corporation and to set aside issuance of receiver's
    certificates, issued pursuant to order of district court, allega-
    tions in petition as to what the evidence was which was heard
    by district court, and on which order issuing certificates was
    based, and other similarly alleged matters dehors the record of
    the district court, except allegations of jurisdictional facts,
    will be stricken.        ⸏
2.   WATERS AND WATER COURSES—WATERS OF NATURAL STREAMS IN
    ARID SECTIONS NOT SUBJECT OF PRIVATE OWNERSHIP.   In arid
    and semiarid sections, corpus of water of natural stream is

not subject to private ownership, but is property of public or state, subject to existing and vested rights of those appropriating waters and making beneficial use of them.

3. WATERS AND WATER COURSES—RIGHTS ACQUIRED ONLY FOR BENEFICIAL PURPOSES. Property rights in waters of natural stream may be acquired only for beneficial purposes.

4. WATERS AND WATER COURSES—WATER AND LAND COMPANY HELD A PRIVATE AND NOT A PUBLIC SERVICE CORPORATION. A water and land company, organized to acquire, lease, and sell water rights for its private benefit and that of its stockholders, and which had sold its waters and water rights to another company and became a mere construction company under contract to construct ditches and canals for such other company, and which was not the owner of the canals, ditches, or irrigation system, held to be a mere private corporation and not a public service corporation.

5. RECEIVERS—COURT CANNOT AUTHORIZE RECEIVER OF PRIVATE CORPORATION TO ISSUE RECEIVER'S CERTIFICATES UNLESS NECESSARY TO EXISTENCE OF PROPERTY OR TO SAVE IT FROM DESTRUCTION. In case of receivership of a private corporation, court cannot issue receiver's certificates for purpose of improving or carrying on business of company, without first obtaining consent of prior lienholders, and without their consent may do so only on notice and hearing when clearly necessary to preserve existence of property or save it from destruction.

6. RECEIVERS—UNDER ALLEGATIONS OF PETITION OF RECEIVER OF INSOLVENT PRIVATE CORPORATION, COURT HELD UNAUTHORIZED TO ISSUE RECEIVER'S CERTIFICATES AND MAKE THEM FIRST LIENS. Where allegations in petition of receiver of insolvent water and land company, which was a private corporation, for issuance of receiver's certificates, merely showed need of funds for improvements and repairs and to pay expenses of receiver, but did not show necessity to preserve existence or prevent destruction of property of company, held that court was unauthorized to order receiver to issue and sell receiver's certificates and make them first liens, displacing prior existing liens.

7. RECEIVERS—COURT HELD UNAUTHORIZED UNDER ALLEGATIONS IN RECEIVER'S PETITION TO ORDER SALE OF PROPERTY OF INSOLVENT PRIVATE WATER CORPORATION, FREE AND CLEAR OF EXISTING MORTGAGE LIEN. Where petition of receiver of insolvent private water and land company for sale of property of company did not show that repairs and improvements, for which receiver's certificates had theretofore been issued, increased value of securities of objecting mortgage lienor, but stated that moneys received on certificates were expended to pay loans and for re-

pairs, and that receiver was without funds to carry on business, *held*, that court was unauthorized to order sale of property without notice or hearing, free and clear of such mortgage lien.'

8. PROHIBITION—WILL NOT ISSUE WHERE PLAIN, ADEQUATE, AND SPEEDY REMEDY OF LAW EXISTS. The writ of prohibition may not be converted into a mere writ of review, and generally, it will not issue where there is available to applicant a plain, speedy, and adequate remedy at law, either by appeal or writ of review.

9. APPEAL AND ERROR—APPEAL LIES ONLY FROM FINAL JUDGMENT; JUDGMENT TO BE FINAL MUST DISPOSE OF SUBJECT-MATTER ON THE MERITS AS TO ALL PARTIES. Under the Constitution and statute, an appeal lies only from a final judgment, and a judgment to be final must dispose of case as to all parties, and finally dispose of subject-matter on the merits or by a termination of particular proceedings or action.[1]

10. APPEAL AND ERROR—ORDER AUTHORIZING RECEIVER TO SELL CERTIFICATES, DISPLACING PRIOR EXISTING LIENS, HELD NOT A FINAL JUDGMENT AS TO STATE, HAVING EXISTING MORTGAGE LIEN. An order of court authorizing a receiver of an insolvent private corporation to issue and sell receiver's certificates displacing prior existing liens, *held* not a final and appealable judgment as to the state which had an existing mortgage lien on such property, since it did not dispose of all of rights of state with respect to its claim.[2]

---

[1] *Watson* v. *Mayberry*, 15 Utah 265, 49 P. 479; *Standard Laundry* v. *Dole*, 20 Utah 469, 58 P. 1109; *Honerine M. & M. Co.* v. *Tallerday, etc., Co.*, 30 Utah 449, 85 P. 626; *Winnovich* v. *Emery*, 33 Utah 345, 99 P. 988.

[2] *North Point Con. Irr. Co.* v. *Canal Co.*, 14 Utah 155, 46 P. 824; *Popp* v. *Mining Co.*, 22 Utah 457, 63 P. 185.

See Headnote 1.    31 Cyc. p. 637.
Headnote 2.    40 Cyc. p. 704 (1926 Anno).
Headnote 3.    40 Cyc. p. 705.
Headnote 4.    40 Cyc. p. 825.
Headnote 5.    34 Cyc. p. 297.
Headnote 6.    34 Cyc. p. 301.
Headnote 7.    34 Cyc. p. 320.
Headnote 8.    32 Cyc. pp. 614, 616, 617.
Headnote 9.    3 C. J. pp. 433, 441, 462.
Headnote 10.    3 C. J. p. 579.
Headnote 11.    32 Cyc. p. 617.
Headnote 12.    32 Cyc. p. 610 (1926 Anno).
Headnote 13.    32 Cyc. pp. 600, 606.

11. PROHIBITION—APPEAL FROM FINAL JUDGMENT IN RECEIVER'S PRO-
CEEDINGS HELD NOT SPEEDY AND ADEQUATE REMEDY AT LAW
AS TO MORTGAGE LIENOR WHOSE LIEN WAS DISPLACED. Where
court ordered receiver of insolvent private corporation to issue
receiver's certificates, displacing prior existing liens as to the
state which had an existing mortgage lien, its right to appeal
from final judgment and disposition of assets of corporation
and have order displacing its lien reviewed *held* not a speedy
or adequate remedy at law precluding state from obtaining writ
of prohibition.

12. PROHIBITION—HELD TO LIE AT INSTANCE OF ONE HAVING MORT-
GAGE LIEN ON PROPERTY OF INSOLVENT PRIVATE CORPORATION, TO
RESTRAIN SELLING OF CORPORATION'S PROPERTY, FREE FROM MORT-
GAGE LIEN PURSUANT TO VOID ORDER OF COURT. Where court in
receivership of private corporation entered unauthorized order
directing receiver to issue and sell receiver's certificates, dis-
placing existing prior liens, and thereafter entered void order
directing sale of corporation's property free from existing liens,
*held*, that prohibition will lie at instance of state, having an
existing mortgage lien which was thereby displaced, to prevent
threatened action to sell such mortgaged property stripped of
mortgage lien, pursuant to court's void order.

13. PROHIBITION—WHEN ISSUANCE OF WRIT MATTER OF RIGHT AND
WHEN DISCRETIONARY STATED. Where tribunal whose action is
complained of is clearly without jurisdiction and relator has
no other remedy, issuance of writ of prohibition is matter of
right, but where question of jurisdiction of inferior tribunal is
doubtful or depends on facts which are not made a matter of
record, the granting or refusing of a writ is discretionary.

Application for writ of prohibition by John T. Oldroyd,
as Land Commissioner, against Wm. M. McCrea, as Judge,
etc., and another.

WRIT ISSUED.

*Harvey H. Cluff*, Atty. Gen., and *J. Robert Robinson*, Asst.
Atty. Gen., for plaintiff.

*Cheney, Jensen, Martineau & Stephens*, of Salt Lake City,
for defendants.

STRAUP, J.

In the case of *Assets Realization Company* v. *Sevier River Land & Water Company,* an insolvent corporation (hereinafter referred to as the land and water company) a receiver, in June, 1923, was appointed by the district court of the Third judicial district. Prior thereto, and in October, 1918, the land and water company, for money loaned, gave its promissory note to the state in the sum of $160,000, and to secure the payment thereof executed to it its mortgage on about 4,000 acres of land in Millard county and 4,000 shares of the capital stock of the Sevier Canal Company, a corporation, which mortgage was duly recorded. When these proceedings were instituted there was due and unpaid on the note and mortgage the sum of about $184,000. Neither the state nor any one in its behalf was made a party to such receivership proceedings. In October, 1923, on application of the receiver, the district court granted an order authorizing the receiver to issue and sell receiver's certificates in the aggregate amount of $250,000, and made them first liens on all of the properties, both real and personal, of the land and water company, and displaced all prior existing liens. In October, 1924, on the further application of the receiver, the court granted an order selling all the property, both real and personal, of the land and water company free and clear of all liens and incumbrances of whatsoever kind or character, except those of the certificates. Thereupon Oldroyd, as land commissioner of the state of Utah, and on its behalf, as plaintiff or petitioner against the district court and the receiver as defendants, applied to this court for a writ of prohibition to restrain the sale, especially of the real estate and stock covered by the state's mortgage.

The defendant demurred to the petition for the writ, and moved to strike portions of it. In the petition it is alleged that the land and water company is a private corporation, and that the district court exceeded its jurisdiction in authorizing the certificates and making them first liens and thereby displacing the prior and existing mortgage lien of the state, and likewise exceeded its jurisdiction in ordering a sale of all the properties of the company, including the real estate

covered by the state's mortgage, free and clear of its mort-
gage. In such particular, after alleging the appointment of
the receiver in June, 1923, and the pendency of the action,
the substance of the petition is: That the land and water
company is not a public or quasi public but a private corpo-
ration organized under the laws of the state to acquire title
to and ownership in lands and water and to sell them to
"divers individuals" at a profit to the company and its stock-
holders, and at no time rendered any public service; the
execution and recording of the state's mortgage in October,
1918, and the amount due and unpaid, making a copy of the
note and mortgage a part of the petition; that after the or-
ganization of the land and water company there was organ-
ized the Sevier Canal Company, a Utah corporation to
which the land and water company conveyed all of "its
waters and water rights to be perpetually held, owned, used,
and enjoyed by the Canal Company and its stockholders for
use in the irrigation of lands of such stockholders, in consid-
eration of which the Canal Company sold and transferred a
majority" of its shares of the capital stock to the land and
water company; "that the status" of the land and water
company, "when the receiver was appointed, was that of a
private construction company and was under contract to
construct ditches and canals for the Sevier Canal Company,
and had not the ownership, control, and management of the
ditches or canals of the irrigation system, but were owned,
controlled, and managed by the Sevier Canal Company";
that in October, 1923, the district court, on petition of the
receiver, and on a hearing after notice by publication in a
newspaper and by mail to all of the known creditors and
claimants ordered and directed receiver's certificates in the
aggregate amount of $250,000 to be issued and sold and made
first liens on all of the properties, real and personal, of the
land and water company and paramount to all prior and
existing liens of whatever nature or character, and without
making the state or other claimants parties to such pro-
ceedings, but the state, through the land commissioner and an
Assistant Attorney General of the state, "appeared and

orally objected to and protested against'' the granting of the order on the ground that the court was without jurisdiction, copies of which petition of the receiver and the order of the court were attached to the petition of the plaintiff herein; that on the petition filed by the receiver, on the 14th day of October, 1924, the district court, without notice or a hearing but on an ex parte application of the receiver, on the next day ordered and directed all the properties, real and personal, of the land and water company to be sold for cash free and clear of all liens and incumbrances at a minimum sum of $150,000, copies of which petition and order were also attached to. and made a part of the plaintiff's petition herein; that such order was made notwithstanding only $76,500 of said certificates were alleged to have been sold and that the receiver was unable to sell more, and hence, as alleged by him, was unable to do the acts and things theretofore reported necessary to be done for the preservation of the irrigation system, and for which the certificates were issued; that the petition of the receiver did not set forth sufficient facts to authorize the issuance of the certificates as first liens and to displace prior and existing liens, nor was there averred any necessity to issue the certificates to preserve the existence or to prevent a destruction of the properties of the land and water company, and that the petition for the sale of the properties was so wanting in essentials as not to authorize a sale of the properties in manner as was done, and that the court in such particular further exceeded its jurisdiction in making such order of sale without notice or a hearing; that the evidence adduced by the court on the receiver's petition for the issuance of the certificates was not sufficient to justify or authorize the issuance of them, a transcript of such evidence being attached to plaintiff's petition herein and made a part thereof; that the moneys derived from the sale of the certificates were not expended for the purpose for which they were issued; and that the lands covered by plaintiff's mortgage are in Millard county (in the Fifth judicial district), and not subject to the jurisdiction of the court of the Third judicial district.

The motion to strike is allowed in so far as it is addressed to the allegations of the petition what the evidence was which was heard by the district court, and upon which the order issuing the certificates was based, as well as all other similarly alleged matters dehors the record of the district court, except the allegations respecting the state's mortgage and the character of the corporation of the land and water company and other similar allegations of jurisdictional facts.

The defendants, on the demurrer, contend that the petition does not show any want or excess of jurisdiction, and at most shows, if anything, a mere erroneous exercise of powers of jurisdiction; that the land and water company was a public service company, and on the record the district court was not only authorized but justified in making the orders complained of; that the court in granting the orders, especially the order issuing the certificates and making them first and paramount liens, had jurisdiction both of subject-matter and of person; that such order was final and appealable, and hence the state had an adequate remedy by appeal but failed to avail itself within the time (six months) in which an appeal therefrom could have been prosecuted.

The allegations in the petition for the writ show the land and water company to be a private and not a public or quasi public or public service corporation—not the mere allegation that the company was a private corporation, but the alleged facts showing the nature and character of the corporation and the purposes for which it was organized and the business carried on by it. 7 R. C. L. "Corporations," §§ 14 and 15; 14 C. J. "Corporations," §§ 42-46. Nor is it disclosed by the record before the district court that the land and water company was anything more than a private corporation. In the petition of the receiver for the certificates, it is alleged that the land and water company was organized for the purpose of owning and operating irrigation projects and reclaiming arid lands, and was engaged in the management, control, and operation of an irrigation project in Millard and Juab counties and using water appropriated from the Sevier river,

a natural stream in the state, and that the project comprised about 35,000 acres upon which many farmers had made their homes, and was responsible for such operation and for a seasonal water delivery "through its subsidiary operating company, Sevier Canal Company," which was alleged to be a mutual co-operative irrigation company the stock of which was purchased and owned by landowners and water users, and that the land and water company "is the construction company in charge of building said irrigation system, organizing and maintaining said Sevier Canal Company, and making actual delivery of water, as a public service corporation, and your petitioner [the receiver] is required, not only by the creditors in whose behalf he is operating said project, but also by the public at large, to protect and conserve by said expenditures said irrigation system and the estate, assets, and properties of said defendant," the land and water company. The statement in such petition of the receiver that the land and water company was "a public service corporation" is a mere conclusion, and is not supported by the allegations of fact therein stated by him respecting the character and purpose of the organization of the company. Such averments of fact show that the direct object of the corporation was to promote private interests in which the public had no concern, except indirect benefits resulting from the promotion of the enterprise and the development of the general resources of the community. The company derived nothing from the state, except the right to be a corporation and to exercise the powers granted for the benefit and advantage of its stockholders or its assigns.

Under the statute it was not a public utility company; nor, so far as made to appear, was it controlled or attempted to be controlled by the Public Utilities Commission; nor is there any claim made that it was subject to such control. On the alleged facts as well call a mining company or a sugar beet company a public service corporation because its promotion and operation developed the resources of the country, induced trade and business, and indirectly benefited the public. It is urged that since by the statute waters of all streams in the

state are declared "to be the property of the public, subject to all existing rights to the use thereof," and the use of water for beneficial purposes declared to be "a public use," therefore the appropriation and use of water of the river by the land and water company characterized it a public service company. There is nothing to that. As well say a farmer, or an association or other company appropriating water of a stream in the state and using it for culinary or irrigation purposes for his or its own use and benefit is engaged in public service. The statute does not warrant such a construction. Under the statute, and before its enactment, it is and was settled doctrine in arid and semiarid sections of our country that the corpus of water of a natural stream was not subject to private ownership but was the property of     **2, 3** the public or of the state, subject to existing and vested rights of those appropriating them and making a beneficial use of them. We all know it is only to the use of waters for a beneficial purpose that property rights in waters of a natural stream may be acquired. The provision of the statute declaring the use of such waters for a beneficial purpose to be "a public use" is to enable water users, whether a person, association or corporation, to acquire rights of way across and upon public and private lands for the construction, maintenance, repair and use of reservoirs, dams, gates, canals, ditches, flumes, etc., upon payment of just compensation, and to set at rest that such taking is not taking private property for private instead of a public use, and not to characterize the mere appropriation of waters of a natural stream and using them for beneficial purposes and private benefit, a public service.

Surely it cannot successfully be contended that a farmer appropriating waters of a natural stream and using them to raise crops for private benefit is engaged in public service; equally well may it not be said that a corporation, under the same circumstances, is engaged in public service. A water or irrigation corporation or association of course may be so organized and carry on a business of such character as to be a public service company. But such is not the character of

the land and water company. It, as has been seen, is but a
private business corporation organized to acquire, sell and
lease water rights for its private benefit, and that of its stock-
holders. It is not organized to serve the public or to render
public service like that of a railroad, telephone or telegraph
company. And in the petition for the writ, it is averred that
the land and water company, long prior to the appointment
of the receiver, sold all of its waters and water rights to the
Sevier Canal Company and became a mere construction com-
pany under contract to construct ditches, canals, etc., for the
Sevier Canal Company. In the petition of the receiver for
the certificates it is not alleged that the land and water com-
pany was the owner of the waters and water rights, or of
the canals, ditches or irrigation system. There too it is al-
leged that the land and water company became and was
a construction company for the Sevier Canal Company. In
view of such facts, it is difficult to perceive wherein the land
and water company is or was a public service corporation.
Our conclusion from the whole record therefore is that it was
a mere private corporation. The cases cited by the
defendants, in our opinion, do not show the company     4
to be a quasi public or public service corporation
except as influenced by special statutory provisions.

It, however, is further contended by the defendants that
though the company was a mere private corporation, still,
upon the alleged facts, and especially those in the petition of
the receiver for the certificates, the district court was author-
ized to grant the order directing the certificates to issue; and
in connection therewith it is contended that a court of equity
is authorized in receivership cases, even in case of a mere pri-
vate corporation, to issue certificates and make them first
liens to preserve the property and assets of the company.
The rule is well settled that a court of equity in cases of re-
ceivers of railroads, upon a proper showing of necessity and
upon notice and hearing, may authorize a receiver to issue
and sell certificates and make them first liens and displace
prior existing liens, with or without the consent of prior lien-
holders; but it is not often where such power is exercised in

other cases of quasi public corporations, and rare where it is exercised in case of a mere private corporation. The reason for such rule is that railroads are quasi public corporations or concerns through which public interests and convenience as well as private ownership are subserved, and where the maintenance of the roadway and equipment and the continuation of the business and operation of the road are essential, not only to the preservation of the mortgage securities, but also to the welfare and comfort of the general public. *Fidelity & Ins., etc., Co.* v. *Roanoke Iron Co.* (C. C.) 68 F. 623; *Union Trust Co.* v. *Illinois Mid. R. Co.*, 117 U. S. 434, 6 S. Ct. 809, 29 L. Ed. 963; Notes and citations Ann. Cas. 1913C, 39.

In High on Receivers, § 398c (4th Ed.) the author says:

"In actions for the foreclosure of railway mortgages, a practice has grown up in recent years of authorizing the receiver appointed in the foreclosure proceedings to issue debentures or certificates of indebtedness for the purpose of raising money to procure materials, labor, supplies and rolling stock, for the maintenance and repair of the road, and in some instances for completing an unfinished line or for making extensions of an existing line of road. These certificates are, by the order of the court, declared to be a first lien upon the entire property, income and franchises of the railway company, and such order is usually recited in the body of the certificate itself. In cases where resort is had to this method of raising money, the income of the receivership being generally inadequate to the payment of the certificates, they are usually paid out of the proceeds of foreclosure, before distribution among the mortgage bondholders. The power to thus create a new lien or mortgage upon the property, and to give it priority over existing mortgages, marks the extreme limit which courts of equity have thus far attained in the exercise of their extraordinary jurisdiction. It can hardly be questioned that the exercise of such a power impairs the obligation of the mortgage contract, and frequently results in the diversion of a large portion of the mortgage security. A power so dangerous because so boundless cannot be sustained upon any just principle of legal reasoning. * * * The exercise of the power is also justified from the peculiar nature of railway property and from the necessity of continuing it in operation as a 'going concern,' pending foreclosure proceedings, as well as for the preservation and protection of the interests of the public. The jurisdiction is to be exercised with extreme caution, and, if possible, with the consent or acquiescence of the parties in interest."

In notes to Ann. Cas. 1913C, 42, the rule is stated:

"The principles on which the doctrine regarding quasi public corporations rests have no application whatever to private corporations which owe no duty to the public. In the case of a private corporation the court cannot authorize the issuance of receivers' certificates for the purpose of improving, adding to, or carrying on the business of the company, without first having the consent of creditors whose liens would be affected thereby."

Numerous cases are cited in support thereof.

In the case of *International Trust Co.* v. *Decker Bros.,* 152 F. 78, 81 C. C. A. 302, 11 L. R. A. (N. S.) 152, in the headnote, it is stated:

"The practice of issuing receivers' certificates to continue the business and giving them priority of lien is peculiar to cases of insolvent railroad companies or other public service corporations, and finds its reason in the necessity of keeping the business a going concern both for the convenience of the public and the preservation of the security, but neither the practice nor the reasons supporting it apply to corporations engaged in a strictly private business, and, in case of such corporations, the court has not the power to authorize a receiver to incur indebtedness for carrying on the business and to make the same a paramount lien upon the corpus of the property, to the displacement of prior contract liens, without the consent of the holders of such liens."

There, however, is a circumstance where under some of the cases it is held that a court in a receivership of a private corporation is authorized to issue certificates and make them first liens, when it is necessary to preserve the existence of the property or franchise, or to save it from destruction. The principle in such respect is stated in 8 Fletcher, Cyc. Corp. § 5351, as follows:

"The court, unless the holders of prior liens consent thereto, cannot authorize the issuance of receiver's certificates, which shall be a first lien on the property, in order to enable the receiver to continue the operation of the business, unless it is necessary to carry on the business to preserve the existence of the property or franchises, where the corporation is a strictly private one, such, for example, as a mining company or ice company, as opposed to quasi public corporations. So far as strictly private corporations, as distinguished from quasi public corporations, are concerned, it is held that 'the court is without authority, except by the consent of the mortgage lienholders, to supplant their liens by receiver's

certificates issued for any obligations other than those arising by way of expenditures for realization and for preserving the property while the business is in course of administration under the receivership. It cannot, by its edict, make any debt or obligation a prior lien, unless appropriately entitled thereto under the law governing receiverships.' In short, there are two exceptions only under which a receiver may be authorized to issue certificates which shall be entitled to priority over existing liens, in the case of a strictly private corporation, viz.: (1) Where all the lien-holders consent; (2) where the purpose is not merely to operate the business but to save the property from destruction. And even in the latter case some states have denied the power to authorize certificates."

Again, in Ann. Cas. 1913C, 45, it is stated that:

"There is one circumstance which will justify a court in authorizing the issuance of receiver's certificates in the case of a private corporation and displacing prior liens thereby. In a case in which the money is required, not for the purpose of operating the business, but for the purpose of saving the property from destruction, the authority exists"—citing cases.

As an illustration of that, the case of *Jerome v. McCarter*, 94 U. S. 734, 24 L. Ed. 136, is referred to, where receivers' certificates were issued for the purpose of preserving the property and franchises of the company. There the lands granted by an act of Congress and covered by the mortgage reverted to the United States unless a ship canal which the corporation was constructing should be finished within a fixed period and the period passing away and the certificates issued to complete the canal and save the property. So imperative was the necessity that the lien creditors, all of whom were in court, made no objection to the issuance of the certificates. Nor did they contest their right of priority, that question being raised by the assignees in bankruptcy of the insolvent company. A further illustration is the case of *Karn v. Rorer Iron Co.*, 86 Va. 754, 11 S. E. 431, where the property consisted of a mine which had no marketable value independent of a railroad constructed and used for the transportation of ore. Hence, the court authorized its receiver to protect the title of the railroad and to repair it and to borrow money on certificates, making them a first lien on all the company's property. On the other hand there are cases

where the right to issue certificates was denied to private corporations, although the money was needed for the preservation of the property. *Hooper* v. *Central Trust Co.*, 81 Md. 559, 32 A. 505, 29 L. R. A. 262; *Perrin, etc., Co.* v. *Cook Hotel, etc., Co.*, 118 Mo. App. 44, 93 S. W. 337.

In the first case the court observed:

"When the property of private corporations or of individuals has been placed in the hands of a receiver, all expenses for safekeeping and preservation are properly payable out of the income, if there be any, or if there be none, then out of the proceeds of the corpus of the estate when sold. But this necessary power by no means includes authority in such, instances to allow the creation of liens through the medium of receivers' certificates which will take priority over existing antecedent liens. 'Extensive as are the powers of courts of equity, they do not authorize a chancellor to thus impair the force of solemn obligations and destroy vested rights.' "

As stated by the annotator in Ann. Cas. 1913C, even as to railroad companies the power to issue certificates and to make them first liens is to be sparingly exercised, as it is liable to great abuse; and while it is usually resorted to under the pretext that it will enhance the security of the bondholders, it not infrequently results in taking from them the security they already have.

We are inclined to the view, and so hold, that in case of a receivership of a private corporation the court is not authorized to issue receivers' certificates for the purpose of improving, adding to, or carrying on the business of the company without first having the consent of the creditors whose liens are affected thereby; and without their consent may do so only on notice and a hearing when a clear necessity is shown to preserve the existence of the property of the company or to save the property from destruction. No such necessity was here shown. The petition of the receiver for the issuance of the certificates, in substance, recites that, for a year and a half prior to the appointment of the receiver, the land and water company was financed and operated through the aid of creditors whose claims aggregated in excess of $2,000,000 (without alleging which of those were secured and which unsecured); that

engineer reports had been made with respect to the capacity of the irrigation system, its physical condition, and requirements to put it in condition permanently to furnish irrigation water for the project, and that to put it in such condition certain betterments were required without delay, which, as recited, consisted of a "construction of a dual control of a dam" in which another corporation, the Consolidated Sevier River Bridge Reservoir, was interested, and in which the land and water company had a proportional interest of 57 per cent., at a cost of approximately $35,000, repair of a wood-stave syphon of which 25 to 30 per cent of the staves were badly decayed and no longer sufficient to stand the strain, thereby, as alleged, imperiling the irrigation of lands, at a cost of at least $6,000, the repair of tunnels which had partially caved in restricting their carrying capacity, at an estimated cost of $45,000, constructions of new laterals, lateral gates, drainage flumes, and headgates, canal bridges, and repairs of the main canal in and out of the canyon, at an estimated cost of $83,000, and funds needed to repay a loan of $15,000 which theretofore was borrowed to pay taxes, and "to pay general expense of office, bookkeeping, traveling, legal, engineering, auditing, and other current expenses amounting to approximately $27,000." Such expenditures aggregated about $250,000. It was further alleged that a majority of the creditors, both secured and unsecured of the company had given written consent to the issuance of the certificates and making them first liens on all the properties of the company; that unless such certificates were so issued and sold "great loss will be suffered by secured and unsecured creditors alike, and irreparable damage done to the settlers and landowners under the project, and to the public communities in Juab and Millard counties."

Upon such petition, an order was made that notice be given to the company and creditors by publication in a newspaper and by mail requiring them to show cause why such certificates in the aggregate sum of $250,000, should not issue and be made first and prior liens upon all of the property of the company. Later, an order was made reciting that a hearing

was had on the petition; that notice was "given by publication as required by law and the order of the court"; that evidence was heard and that the court found "the facts set forth in said petition to be true," and that the certificates in the aggregate sum of $250,000 be issued and sold and made a first and prior lien upon all the property of the company. The court appointed a trustee for the purchasers and holders of the certificates and authorized him to receive and hold all of the properties of the land and water company, together with the issues and profits thereof for the payment of the certificates, required the receiver to deposit with the trustee all notes, stocks, contracts, securities, and other evidence of indebtedness, held by him, required all persons holding stocks, notes, contracts, securities, or other evidence of indebtedness as collateral or as security for the payment of their claims against the land and water company to deposit them with the trustee for the payment of the certificates, and gave the receiver authority to make sales of lands, water, water rights, and other properties, to make forfeitures and cancellations of contracts and exchanges of water stock and contracts for sale of stock to purchasers and settlers, and to execute acquittances and releases, and "to continue the business of said company" the land and water company.

Mindful that even in railroad cases the power to issue certificates and displace prior and existing liens is confined within narrow limitations and sparingly exercised, and that in case of private corporations the court is not authorized to so issue certificates for the purpose of improving, adding to, or carrying on the business of the company without first having the consent of the creditors whose liens would be affected thereby, and is authorized only in case where a necessity is clearly shown to preserve the existence of the property or to save it from destruction, we think the allegations in the petition of the receiver for the issuance of the certificates are insufficient to authorize the issuing of them so as to make them first liens and displace prior existing liens. The allegations but show a need of funds for improvements, repairs, adding to and carrying on the business

of the company, and to pay expenses of the receiver. They do not show a necessity to issue certificates to preserve the existence or to prevent a destruction of property of the company or to hold it in status as found by the receiver. They are mere allegations of betterment and utility and to pay expenses of the receiver to continue and carry on the business. We are of the opinion the court was unauthorized, upon such a petition, to issue certificates for any such purpose and make them first liens over prior existing liens.

We are also of the opinion that the court, on the petition of the receiver for the sale of the properties of the company, was unauthorized to sell them in manner as was done, free and clear of the mortgage lien of the state. The petition was presented ex parte by the receiver on the 14th of October, 1924, and on the next day was granted without notice or a hearing. The petition, after reciting formal matters, and that an order was theretofore made authorizing the issuance of $250,000 of receiver's certificates, in substance, recited that the receiver continued the business of the company in an effort to preserve the estate and all its assets and with the aid of the Sevier Canal Company made water delivery for the season of 1924 to the farmers and landowners requiring irrigation water and owning irrigible lands; that all funds collected by the receiver, and all notes and securities held by him had been deposited with the trustee, and "that your petitioner has been and will be able to sell receiver's certificates only in the total sum of approximately $76,500 out of the entire issue authorized by the court, and for such reason was unable to do the acts and things theretofore reported to the court as necessary and essential to the preservation of said irrigation project and said receivership estate as set forth in the petition of the receiver" for the certificates, and "that the bond houses which had agreed to purchase the entire issue of receiver's certificates, after the same were ready for delivery, defaulted in their agreement to buy," and that the receiver was able to sell only sufficient certificates to repay the loan of $15,000, a part of the sum due the Consolidated Sevier River Bridge Reservoir, the most necessary

canal repairs, and current operating expenses; that large creditors from time to time, within nine months prior to the presentation of the petition, had given assurances to the receiver that they would aid in refinancing the project, and in so doing would make it possible to save for the benefit of the secured and unsecured creditors a greater portion of their claims, but that every reorganization plan had failed, and that there was no further hope of refinancing the company in its present condition, and that the receiver was without funds to further carry on the business of the company and of the receivership estate, and that all of the assets of the estate should be sold forthwith free and clear of all liens and incumbrances to pay the expenses of receivership, including attorney's fees and receiver's fees and the outstanding receiver's certificates, and that the surplus, if any, be held subject to the further order of the court for the payment of creditors, and that the receiver be authorized to so sell all of the properties of the company at a minimum sum of not less than $150,000.

Upon such petition the court, ex parte, ordered the sale in manner as set forth in the petition, on giving notice by publication and by mail of the day of the sale. Thus, if the sale is permitted, the state's mortgage will be displaced, the security taken from it, and the state required to share its claim with about $2,000,000 of other claims with no public or any benefit, except to purchasers purchasing the assets of the company free from all existing liens. Further, the state's mortgage does not cover all of the property of the company. The mortgage is not on the project. It is only on a part of the lands of the company and on 4,000 shares of capital stock held by it of the Sevier Canal Company. It is not made to appear that the contemplated improvements and repairs for which the certificates were issued increased the value of the state's securities or in any way benefited or protected them. The proceedings in effect but canceled the state's mortgage without recompense, with resulting benefits to purchasers of the assets. In the petition for the sale it is recited that of the $250,000 the receiver "has been and will be able to sell" only

$76,500, and that he "was unable to do the acts and things theretofore reported to the court as necessary and essential to the preservation of the said irrigation project." How many of the certificates were actually sold up to that time is not disclosed. What moneys were received on the certificates were expended, as in the petition alleged, to pay loans, current operating expenses, and for repairs, and the receiver was without funds to further carry on the business of the company, and all hope of reorganizing or refinancing it was abandoned. So far as disclosed by the petition, the condition was no better when the certificates were authorized.

Extensive as may be the power of a court of equity it has not such unlimited discretion to so displace vested liens in case of a mere private corporation. It may here be said, as was said in the case of *Farmers' Loan & Trust Co.* v. *Burbank Power & Light Co.* (D. C.) 196 F. 539, that the court was asked through its receiver "to reconstruct a faulty irrigation system, and for this purpose to displace in a large measure the lien on the property created by the deed of trust: and this against the wish and earnest protest of the lienholders. There are two unanswerable objections to the granting of the relief prayed for. First, I do not think it is within the power or jurisdiction of the court to do so; and, second, if it is within the power of the court, sound judicial discretion forbids its exercise." To the same effect are the cases of *International Trust Co.* v. *United Coal Co.*, 27 Colo. 246, 60 P. 621, 83 Am. St. Rep. 59, and *Belknap Savings Bank, etc.,* v. *Lamar Land & Canal Co.*, 28 Colo. 326, 64 P. 212.

This brings us to the question of remedy. The writ of prohibition may not be converted into a mere writ of review and undo what already has been done. It is preventive and not corrective. As a general rule it will not issue where there is available to the applicant a plain, speedy, and adequate remedy in the ordinary course of law, either by appeal or writ of review. It is argued that the order authorizing the issuance and the sale of certificates was a final and appealable judgment. In support of that, the case of *Farmers' Loan &*

*Trust Co., In re,* 129 U. S. 206, 9 S. Ct. 265, 32 L. Ed. 656, is cited. But there the order was made after final decree of foreclosure, after the main case was disposed of and judgment entered. It was an order made affecting    **8, 9** substantial rights of the parties after final judgment in the case. The situation here is different. The order here was interlocutory. Under our Constitution and statute an appeal lies only from a final judgment. This court in numerous cases has held that a judgment to be final for purposes of an appeal must dispose of the case as to all of the parties and finally dispose of the subject-matter of the litigation on the merits, or be a termination of the particular proceeding or action, or, as sometimes expressed, the case put out of court. *Watson* v. *Mayberry,* 15 Utah, 265, 49 P. 479; *Standard Laundry* v. *Dole,* 20 Utah, 469, 58 P. 1109; *Honerine Mining & Mill Co.* v. *Tallerday Steel Pipe & Tank Co.,* 30 Utah, 449, 85 P. 626; *Winnovich* v. *Emery,* 33 Utah, 345, 99 P. 988.

Thus an order granting an injunction pendente lite was held not appealable (*North Point Con. Irr. Co.* v. *Utah & S. L. Canal Co.,* 14 Utah, 155, 46 P. 824), nor was an order appointing a receiver (*Popp* v. *Mining Co.,* 22 Utah, 457, 63 P. 185). The order here, while it displaced the state's mortgage lien, still did not dispose of nor terminate all of the rights of the state in the premises with respect to    **10, 11** its claim. Matters were still left for disposition respecting the distribution of the assets of the company. If the state at all was in court, it still was there to await a final determination of its claim and its share in the distribution of the assets. It undoubtedly would have had the right of an appeal from the final judgment in the case when entered, and from the final distribution of the assets of the company, and on such appeal could have had reviewed the order displacing its lien, as well as all other interlocutory orders and rulings in the case affecting its substantial rights. But such an appeal would not be speedy or adequate. Ordinarily proceedings of receivership are protracted, and to require the state to wait until final judgment is rendered and entered in the

case before it can have the rulings reviewed, its securities will be dissipated and lavished and its appeal rendered fruitless.

As has been seen, we, on the face of the record before the district court, have reached the conclusion that the court was not authorized to issue the certificates and displace prior and existing liens, and exceeded its jurisdiction in such particular; and also on the face of the petition for the sale of the property that the district court was not authorized to order the sale in manner as was done, selling the property free from all existing liens. It must be conceded that the court was not on its own motion, or on a mere ex parte application, authorized to issue certificates and displace existing liens. To grant such an order required a petition stating a case within the appropriate jurisdiction of the court. Such a petition was essential to invoke action and clothe the court with power to act. If the petition fails in such respect, the error is fatal in every stage, rendering all decretal orders a nullity or affecting them with a ruinous infirmity. The nullity of such an order will keep, nor will it be mellowed by age. It may be assailed directly or collaterally whenever or wherever brought in question. Here the court is about to give effect to and enforce a void order. It is such threatened action which is sought to be arrested. To do that, of course, involves the validity of the prior order and the authority of the court to grant it. But the immediate act or thing sought to be arrested is the present threatened action to sell the mortgage securities stripped of the mortgage lien. We think prohibition lies to arrest such threatened action. As to that, the opinion of Chief Justice Beatty in the case of *Havemeyer* v. *Superior Court,* 84 Cal. 327, is applicable. Among other things he said:

That "the operation of the writ of prohibition is primarily and principally preventive, rather than remedial, and is excluded where the action of the inferior tribunal is fully completed, and nothing remains to be done under its void order; but if its action is only partially and not fully completed, further proceedings may be stayed, and in such case the office of the writ is so far remedial that it will annul such prior proceedings as may be necessary to make the remedy complete."

He further says:

That "the writ of prohibition does not run against ministerial officers, nor to arrest completed action, yet, if the receiver has been appointed and is acting under a void judicial order appointing him, and directing him to seize and hold certain property, and he has seized and is holding the property thereunder, the property in his hands must be regarded as in the hands of the court, whose instrument the receiver is; and since action by the court is necessary so long as the property remains undisposed of, there is judicial action to be arrested and injury to be prevented, and a writ of prohibition will run to and operate directly upon the court, and indirectly upon the receiver, to prevent further action, and to annul the action taken under the void order, and compel restoration of the property seized."

Further, where the tribunal whose action is complained of is clearly without jurisdiction and the relator has no other remedy, the issuance of the writ is a matter of right; but where the question of jurisdiction of the inferior tribunal is doubtful, or depends upon the facts which are not made a matter of record, and where the writ will be granted or withheld according to the facts and circumstances of the individual case, the granting or refusing it is discretionary. *In re Rice*, 155 U. S. 402, 15 S. Ct. 149, 39 L. Ed. 198.

We think the writ ought to issue. Such is the order. Let it be prepared by counsel.

GIDEON, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.