YORK et al. v. BANK OF COMMERCE & TRUST CO.

Western Section.    March 29, 1935.

Petition for Certiorari denied by Supreme Court, January 25, 1936.

Fitzhugh, Murrah & Fitzhugh, of Memphis, and D. A. Richardson, of Oklahoma City, Oklahoma, for appellant.

596

Harsh, Harsh & Harsh and R. Lee Bartels, all of Memphis, for appellees.

KETCHUM, J. The bill in this case was filed by Robert York and Mary Y. Trigg, executors of the will of Jerome B. York, deceased, against the Bank of Commerce & Trust Company, executor of the will of Mrs. Elizabeth York, deceased, to recover on a purported final decree of the county court of McCurtain county, Oklahoma, rendered against the appellant on November 25, 1930, in the probate proceedings in the administration of the estate of Jerome B. York, deceased. There is exhibited with the bill a transcript of the proceedings had in the county court of McCurtain county, Oklahoma, relating to the administration of the estate of Jerome B. York, deceased, from the date of his death in 1919, to and including the entry of said decree; and also certain proceedings had in the district court of McCurtain county, Oklahoma, and of the Supreme Court of Oklahoma, to determine the rights of Mrs. Elizabeth York, widow of Jerome B. York, in said estate. 138 Okla., 216, 280 P., 563, 566. Said transcript is duly authenticated according to the acts of Congress.

The judgment sued on is for $14,025.18, representing monthly advancements of $300 made by the executors of the Jerome B. York estate to Mrs. Elizabeth York from July 2, 1923, to the date of her death in January, 1926, amounting to about $8,400, with interest thereon to the entry of the decree on November 25, 1930.

The Bank of Commerce & Trust Company, executor of the will of Mrs. Elizabeth York, deceased answered said bill and denied that the judgment sued on was a valid and binding judgment under the laws of Oklahoma or of this state and denied that the complainants were entitled to recover anything against it. It was further alleged that under the judgment of the Supreme Court of Oklahoma entered in June, 1929, in the suit brought by Mrs. York to have her rights in the estate of her husband, Jerome B. York, determined, it was adjudged that she was entitled to one-third of said estate as a forced heir under the laws of Oklahoma, and that the advancements of $300 per month made to her from July 2, 1923, to her death in 1926, were only to be charged against her interest in said estate, and that it was not intended that the executors of said estate should recover said sums from her executor. It was also averred that at the time said decision was rendered by the Supreme Court of Oklahoma, the estate was worth more than $150,000, and her share therein amounted to much more than the $8,400 advanced to her with interest thereon, and that after deducting therefrom the said $8,400 and interest, there remained a very substantial sum to which her estate was entitled; and that in a final settlement of the estate of said Jerome B. York had in

the county court of McCurtain county, Oklahoma, on May 3, 1930, a final judgment was entered in its favor for $39,018.35 against said executors and that said executors prayed an appeal, and the appeal bond was fixed at $40,000, but said appeal was not perfected. It was alleged that thereafter, on August 4, 1930, the county court of McCurtain county, Oklahoma, without notice to Mrs. York's executor or its attorney, and without any right or authority to do so, undertook to set aside the final settlement and judgment of May 3, 1930, and to enter said judgment of November 25, 1930, but, that said court was without jurisdiction to set aside the final decree of May 3, 1930, and that the said decree of November 25, 1930, was a nullity. It was also alleged that the defendant as executor of the will of Mrs. Elizabeth York, deceased, had sued complainants on said judgment for $39,018.35, in the chancery court of Shelby county, and that said suit was still pending. Thereafter, by consent of parties, said suit was dismissed, and defendant was allowed to file a cross-bill to recover on said $39,018.35 judgment in this action.

The complainants filed their answer to said cross-bill in which they denied that the county court of McCurtain county, Oklahoma, was without jurisdiction to set aside the settlement and decree of May 3, 1930, by the order of August 4, 1930, and denied that it was without authority to enter the judgment of $14,025.18 against defendant on November 25, 1930, and denied that said judgment was void.

On the hearing of said cause the chancellor rendered a decree in favor of the complainant on said judgment for $14,025.18, with interest thereon, and dismissed the defendant's cross-bill, and from this decree the defendant has appealed to this court and assigns errors.

The first three assignments of error are based upon the action of the chancellor in entering a decree in favor of complainants and against the defendant on said judgment of $14,025.18 and interest—

First, because the county court of McCurtain county, Oklahoma, was without authority to render any judgment against defendant which would be binding upon it in the probate court of Shelby county, Tennessee.

Second, because said judgment of the county court of McCurtain county, Oklahoma, rendered against the defendant as executor of the estate of Elizabeth York, deceased, was not entitled to full faith and credit in the courts of Tennessee; the defendant having been appointed as such executor in the probate court of Shelby county, Tennessee, and having in its hands no assets in the state of Oklahoma.

Third, because the decree of November 25, 1930, was void under the laws of the state of Oklahoma.

The fourth assignment is based upon the action of the chancellor in holding that the decree of May 3, 1930, was not a valid final decree, binding on the executors of Jerome B. York, deceased, and dismissing the defendant's cross-bill seeking a recovery on said decree.

The following facts are material to the determination of the questions raised by these assignments of error:

Jerome B. York resided for many years in the city of Memphis and accumulated quite a large estate in this state. Some years before his death, which occurred in 1919, he removed to McCurtain County, Oklahoma, where he resided at the time of his death. His wife, Elizabeth York, was for many years in poor health, afflicted with goiter and heart trouble, was exceedingly nervous, and on account of her nervous condition she had been for many years confined in a sanitarium for the treatment of nervous diseases in Michigan.

After he removed to Oklahoma to live, Jerome B. York executed a will in which he named his son, Robert York, and his daughter, Mrs. Mary Y. Trigg, as executors. In his will he directed his executors to create a trust fund of $70,000 to provide an income of $300 per month for the maintenance and support of his widow during her lifetime; he left small legacies to his two daughters, Mrs. Nelson and Mrs. Johnson, and several other relatives, and gave the residue of his estate to his son Robert York, and his daughter Mrs. Mary Y. Trigg. He also conveyed to the said Robert York and Mrs. Mary Y. Trigg a considerable part of his real estate.

After the death of J. B. York, Mrs. Nelson and Mrs. Anderson secured the release of their mother from the sanitarium in Michigan, and she thereafter lived with Mrs. Nelson and Mrs. Johnson in Memphis until her death, which occurred in January, 1926. Shortly after her release from the sanitarium, Mrs. York brought a suit against her son Robert, and her daughter Mrs. Trigg, seeking to set aside the conveyances of property (alleged to be worth $1,500,000) made to them by their father, upon the ground that the conveyances had been obtained by fraud and undue influence. She was unsuccessful in this litigation.

She also filed a bill to have the will construed and to have her rights thereunder determined. It was her contention that she was not only entitled to the annuity provided by the will, but was also entitled to one-third of the entire net estate as a forced heir under section 11224 of the Compiled Oklahoma Statutes 1921, which provides that: "No man while married shall bequeath more than two-thirds of his property away from his wife, nor shall any woman while married bequeath more than two-thirds of her property away from her husband." Under a stipulation of counsel, and order

of court based thereon, the sum of $300 per month was paid to her without prejudice to the rights of either party in the litigation.

On July 2, 1923, the executors filed their final account which was submitted to the court. This showed that all debts and expenses of administration had been paid except certain attorneys' fees and court costs, and the court by journal entry of July 25, 1923, adjudged that "the estate is now ready for distribution among the heirs, legatees and devisees." But, because of the pending suit to have the court determine the rights of Mrs. York under the will, the final distribution was postponed..

Mrs. York died testate in January, 1926, while the suit was still. pending in the Supreme Court of Oklahoma, and the Bank of Commerce & Trust Company, of Memphis, was appointed and qualified as executor of her will in and by the probate court of Shelby county, Tennessee. The only assets which it received consisted of some personal property which came to her from her uncle. It never received anything from the estate of Jerome B. York, which was being administered by the complainants as executors of the J. B. York estate in McCurtain county, Oklahoma.

After Mrs. York's death, the Bank of Commerce & Trust Company, as her executor, but without any order of the probate court of Shelby county, Tennessee, and without qualifying as her executor in any ancillary proceeding in Oklahoma, entered its appearance in the suit pending in the Supreme Court of Oklahoma, and had that cause revived in its name as her executor. The case was decided by the Supreme Court November 15, 1927, but a petition for a rehearing was filed, and this was not disposed of until June 4, 1929, when the court held that: 'Since the will was invalid as to her unless she affirmatively elected to take under it, and since she did not do this, it follows that one-third of the estate of Jerome B. York was inherited by her as a forced heir, and on her death the same passed to her heirs or legatees."

With reference to the monthly allowance of $300 it was held, on the petition for a rehearing, that "the widow be allowed $300 per month from the date of the death of the deceased to the 2nd day of July, 1923, which amount shall be paid out of the estate and charged as other costs of administration. All sums paid to her after the 2nd day of July, 1923, should be charged to and against the one-third of the estate inherited by her heirs." Bank of Commerce & Trust Co. v. Trigg, 138 Okla., 216, 280 P., 563, 568.

The judgment of $14,025.18 here sued on represents the advances made to the widow after July 2, 1923.

The Supreme Court remanded the cause "with directions that the estate be distributed in accordance with the views herein expressed."

By agreement of the parties, the Constitution, statutes, and decisions of the Supreme Court of Oklahoma, as reported, so far as

applicable to this case, were introduced in evidence. From these it appears that the county court in Oklahoma is a court of record, having general jurisdiction of the administration of estates. The court has no terms, but is open for the transaction of all matters within its probate jurisdiction at all times. Appeals from its final judgments and decrees lie to the district court, and must be perfected within ten days; and there is no method provided for the review of its judgments and decrees except by appeal.

The mandate from the Supreme Court was filed in the county court on November 9, 1929. On May 3, 1930, a final judgment or decree was entered in the administration case recasting and settling the final account of Robert York and Mary Y. Trigg, executors, in which it was adjudged that the value of the estate for distribution was $142,255.05, and that under the decree of the Supreme Court Mrs. York's executor was entitled to one-third or $47,418.35, less the sum of $8,400 advanced to her by the executors after July 2, 1923, leaving a balance of $39,018.35 due her executor. It is now asserted that this decree was entered without notice to the Jerome B. York executors, but it appears from the order entered July 2, 1923, that the estate was then wound up and ready for distribution; and it is recited in this decree that there was a stipulation on file that the final settlement would be made upon the coming down of the mandate from the Supreme Court; that by stipulation the cause had been set for hearing on March 31, 1930, at which time by request of the executors of Jerome B. York, deceased, the cause was continued until the 28th of April, 1930; that on that date counsel for said executors of the J. B. York estate requested a further continuance which was refused by the court. It is further recited that the parties were represented by counsel; that the Bank of Commerce & Trust Company had filed exceptions to the settlement on file; that the court heard the testimony of witnesses thereon and examined the files and records in the cause; and that he then took the case under advisement and set the cause down for hearing on May 3, 1930, on which date he finally disposed of the cause. The decree finally settled the account of the executors and decreed the rights and interests of the parties concerned and the executors of J. B. York, deceased, excepted and gave notice of an appeal which was granted upon the execution of an appeal bond in the sum of $40,000.

On the same day a final decree for distribution was entered, which recited that "the estate has been fully administered, that due notice has been given and served, reference being had thereto, and the said estate is now ready for distribution." The decree then described all the property, real and personal, remaining in the hands of the executors, and the value thereof as appraised and shown in the inventory; adjudges that the Bank of Commerce & Trust Company as executor of Elizabeth York, deceased, was

entitled to one-third of all of said real estate, and one-third of the personalty, less the $8,400 in cash paid to her in her lifetime; then sets out the amounts due the various specific legatees, and adjudges that all the residue of said property, real and personal, should go to Mary York Trigg and Robert York in equal shares. It was then decreed that the shares of said estate "be and the same are hereby transferred, vested, assigned and conveyed unto said heirs as follows:" (Setting out the share and amount due each.) To this decree the executors of J. B. York, deceased, excepted and gave notice of an appeal and the appeal bond was fixed at $40,000, but no appeal was perfected from either of these decrees.

On May 13, 1930, the executors of the Jerome B. York estate filed written motions to set aside the decree allowing their final account and the decree for distribution, entered on May 3, 1930, upon the ground that they had no notice whatever of the proposed hearings, that the court was without jurisdiction to enter said decrees, that no evidence was heard, etc. These motions were not sworn to or supported by affidavits.

On August 4, 1930, an order was entered which purported to vacate and set aside the two decrees entered on April 28 and May 3, 1930, and permitting the said executors to file their final report, and setting the cause down for hearing on said report on September 2, 1930, and directing the clerk to give notice of said hearing to all parties of record. This order was entered without the knowledge of the Bank of Commerce & Trust Company, executor of Mrs. Elizabeth York, deceased, or her attorneys.

The Bank of Commerce & Trust Company, executor of Elizabeth York, deceased, filed a plea to the jurisdiction, challenging the authority of the court to enter the order of August 4, 1930, purporting to set aside the two decrees entered on May 3, 1930, and permitting the executors of the J. B. York estate to file another final account, because the decrees of May 3rd had become final and were conclusive upon all parties before the entry of said order of August 4th. The plea was overruled, and all exceptions thereafter filed by the Bank of Commerce & Trust Company, executor, were decided adversely to it, and by final decree entered November 25, 1930, the decree for $14,025.18 sued on in the original bill herein was entered against it. It gave notice of an appeal and the bond was fixed at $28,050.36, but it did not perfect its appeal.

Thereupon, the Bank of Commerce & Trust Company, executor of Elizabeth York, deceased, filed in the district court a petition for a writ of prohibition against the judge of the county court of McCurtain county, "commanding him to desist and refrain from any further proceedings in said probate cause No. 2255," etc. A transcript of said probate proceedings was exhibited with this petition. The county judge answered the petition at length, stating among other things that said proceedings were regular; that the

decrees of May 3, 1930, were entered through mistake; that the decree of November 25, 1930, was a final decree; that he had no intention of entering any other or further orders or decrees in said cause and would not do so. On the hearing the petition for the granting of said writ was denied.

The first two assignments of error involve the right of the complainants to recover in Tennessee on the judgment obtained by them again Mrs. York's executor in the state of Oklahoma. For the purpose of these assignments it is assumed that the Oklahoma judgment is a valid judgment and that the complainants would be entitled to subject to its satisfaction any assets coming into the hands of her executor in the state of Oklahoma. The question here is whether under the full faith and credit clause of the Constitution the complainants are entitled to recover on said judgment in Tennessee so as to reach the assets which have come into the hands of the defendant in Tennessee. We think not.

A leading case on the subject, decided in 1848, is Stacy v. Thrasher, 6 How., 44, 59, 12 L. Ed., 337, in which it was held that an action could not be maintained in one state on a judgment obtained against a different administrator of the same intestate appointed under the authority of another state. The reasoning of the court was that while each of the administrators was in privity with the intestate, "they have no privity with each other, in law or in estate. They receive their authority from different sovereignties, and over different property. The authority of each is paramount to the other. Each is accountable to the ordinary from whom he received his authority. Nor does the one come by succession to the other into the trust of the same property, encumbered by the same debts."

And the court quoted the following statement of the rule from Story on Conflict of Laws, section 522: "Where administrations are granted in different states they are so far deemed independent of each other, that a judgment obtained against one will furnish no right of action against the other, to affect assets received by the latter in virtue of his own administration; for in contemplation of law there is no privity between him and the other administrator."

And it is immaterial that the same person is acting as administrator in both jurisdictions.

In Judy v. Kelley, 11 Ill., 211, 50 Am. Dec., 455, 456, 457, the facts are so similar to those in the case before us that we quote at length from it. The facts there were that suit was brought in Ohio against one Allington, a resident of Illinois, and service of process was had upon him. During the pendency of the action Allington died, and his administrators appointed in Illinois entered their appearance in the action and defended, with the result that judgment was entered against them. They had not been appointed

administrators in Ohio. Thereafter, suit was brought against them in Illinois on the Ohio judgment. The court say:

"This presents the question, whether a judgment recovered in another state, against an administrator appointed in this state, can be here enforced against the estate. A grant of administration in one country, does not confer on an administrator any title to the property of the intestate, situated in another country. He has no authority over, nor is he responsible for any effects of the estate, that may be beyond the jurisdiction. In administering the estate, he acts only in reference to the effects within the jurisdiction, and the debts that may there be presented against the estate. . . .

"The attempt here is to enforce against an estate a judgment rendered in Ohio, against administrators appointed in this state. It is clear that the state of Ohio could not rightfully extend her jurisdiction over the plaintiffs in error, in their official character, while within her limits, further than to compel them to account for such assets as they might there have. The plaintiffs in error derived their authority from this state, and they are to be made responsible here only, for their acts. That state may grant letters of administration on the estate, and in that way have the effects found within her territory administered; but she cannot, by proceedings in her own Courts, reach the assets in this state, or establish claims against the estate that will be here enforced. The debts against the estate are to be adjusted, and the effects belonging to it distributed, according to our own laws.

"But it is insisted, that the plaintiffs in error, by entering their appearance to the action in Ohio, submitted themselves to the jurisdiction of the Court, and cannot now question its authority to pronounce the judgment. This position would be correct, if the proceedings there had been against them personally; but as respects them in their representative capacity, we think the effect is otherwise. The grant of administration in this state gave them no control over the estate in Ohio. It did not confer on them any authority to appear and defend the action—any power to go into another jurisdiction, and there permit claims to be adjudicated against the estate. Their authority is limited, and when they exceed it, their acts will not bind the estate. The appearance being wholly unauthorized by our laws, the judgment that resulted from it is not binding on the estate."

The rule is stated in the Restatement of Conflict of Laws, section 514, as follows:

"A judgment against a foreign administrator in his representative capacity under a statute allowing a foreign administrator to be sued does not create an obligation which can be proved in any other state as a claim against the estate of the decedent."

"Comment:

"(a) To allow the judgment rendered under a statute such as that described in this action to be proved against the estate elsewhere would, in effect allow the state where the judgment was rendered to control the disposition of the estate of the decedent in another state. This, it cannot do.

"(b) But a state can control the disposition of local property of the decedent, and a judgment given under a statute allowing suit against a foreign administrator in his representative capacity is effective so far as it creates a claim against the property of the decedent which the foreign administrator has obtained in the state where the judgment is rendered. The same control may be exercised where the action is directly against property of the decedent which is within the state and has not come into the possession of any administrator."

The rule as thus stated is in accord with the weight of authority. See Burrowes v. Goodman (C. C. A.), 50 F. (2d), 92, as reported in 77 A. L. R., at pages 249, 252, where the annotator states the majority view in the following language: "The weight of authority supports the doctrine that an executor or administrator appointed in another state, and not taking out ancillary letters in the state in which he is sued, cannot, by entering a voluntary appearance in an action, against him, or by otherwise submitting himself to the jurisdiction of the court, confer upon the court jurisdiction to render judgment against him in his representative capacity, where there is no property belonging to the estate in the state where the action is brought."

Many cases, state and federal, are cited in support of this statement of the rule, and we deem the citation of further authority unnecessary, except to say that it is the rule accepted in Tennessee in State v. Fulton (Tenn. Ch. App.), 49 S. W., 297, 300, where the court in the course of an opinion by Wilson, J., in which the authorities are reviewed at length, say: "A judgment recovered against the administrator of a deceased person in one state is no evidence of debt in a subsequent suit by the same plaintiff in another state, either against an administrator, whether the same or a different person, appointed there, or against any other person having assets of the deceased."

See, also, 34 C. J., title Judgments, sec. 1637, p. 1155; 3 Freeman on Judgments (5 Ed.), sec. 1419, p. 2925.

■ We therefore hold that the complainants are not entitled to maintain their suit on the Oklahoma judgment of $14,025.18 sued on in the original bill, against the executor of Mrs. York, appointed in Tennessee, and having under its control no assets except such as came into its hands by virtue of such appointment. Even if it be conceded that the Oklahoma judgment is a valid one, and

enforceable against any assets of Mrs. Elizabeth York, deceased, in the state of Oklahoma, it is not entitled to full faith and credit in the courts of this state, because to give it such full faith and credit would, in effect, empower the Oklahoma court to subject the Tennessee assets to its satisfaction, which will not be permitted. The original bill alleges "that the estate of Elizabeth (York) has no property in the state of Oklahoma, and has never had, out of which execution can be made," etc.; and the decree of November 25, 1930, directs the Bank of Commerce & Trust Company, executor of the estate of Elizabeth York, deceased, to pay said sum, with interest, "from funds belonging to the estate of Elizabeth York, deceased, which are now in the hands, and under the control of the said Bank of Commerce & Trust Company, of Memphis, Tennessee, as such executor." The Oklahoma court was without this authority to direct the Tennessee executor to satisfy said judgment out of the Tennessee assets which were subject to the exclusive control of the probate court of Shelby county, Tennessee.

It results therefore that the first and second assignments of error will be sustained, and the decree rendered in favor of complainants on said Oklahoma judgment will be set aside and the original bill dismissed.

The third and fourth assignments of error are based upon the action of the chancellor in holding that the judgment of November 25, 1930, was a valid and binding judgment under the laws of the state of Oklahoma, and in dismissing the appellant's cross-bill and denying it a recovery against the executors of J. B. York, deceased, on the decrees rendered in its favor on May 3, 1930, and sued on in its cross-bill. The contention is that the said decrees entered May 3, 1930, stating the final account of the executors of J. B. York, deceased, and awarding to Mrs. York's executor the sum of $39,018.35, are valid and binding decrees (this amount being the value of her one-third of the J. B. York estate after deducting therefrom the $8,400 advanced to Mrs. York after July 2, 1923, in accordance with the decree of the Supreme Court). The determinative question is whether the said county court had jurisdiction or authority to set aside said decrees relating to the settlement and distribution of said estate, by the order entered on August 4, 1930, and thereafter to permit the executors to file a supplemental account and settlement, and to enter the decree of November 25, 1930, making an entirely different settlement and distribution of said estate, and rendering a decree of $14,025.18 against appellant instead of $39,018.25 in its favor.

The contention of appellant is that the county court of McCurtain county, Oklahoma, had jurisdiction both of the parties and of the subject-matter when it entered the decrees of May 3, 1930, and

that upon the failure of the executors to perfect their appeal within ten days after that date as required by statute (Comp. St. Okla., 1921, sec. 1413), said decrees became final and conclusive upon all parties under section 1360 of the Compiled Statutes of Oklahoma 1921, which provides that "such order or decree is conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside, or modified on appeal." It is therefore insisted that the order of August 4, 1930, purporting to set aside and vacate the decrees of May 3, 1930, was a nullity, and that all subsequent proceedings had in the case were void. This, in turn, depends upon whether the motions filed May 13, 1930, suspended the operation of the decrees of May 3, 1930, until the motions were disposed of.

It is stipulated "that there are no special laws in the state of Oklahoma specially regulating the practice and procedure in the county court of McCurtain county, Oklahoma," and that the Compiled Oklahoma Statutes, 1921, contain the constitution and all the general laws of the state applicable to this controversy.

The validity of the order of August 4, 1930, purporting to vacate and set aside the decrees of May 3, 1930, was challenged in the county court by the appellants' plea to the jurisdiction, which was overruled. The matter was then brought to the attention of the district court, and later to the Supreme Court, by the appellants' petitions for writs of prohibition, which were denied by both courts.

It is insisted by the appellees that the denial of the writs of prohibition renders the matter res adjudicata. This is not true, however, because the writ of prohibition is not a writ of right, but is an extraordinary writ, and lies only in cases of manifest necessity, and will never be granted where the legal right is doubtful, or where the usual remedies provided by law are available. Russell v. Walker, 160 Okla., 145, 15 P. (2d), 114; Russell Petroleum Co. v. Walker, 160 Okla., 156, 15 P. (2d), 125; Hall v. Welch, 151 Okla., 206, 3 P. (2d), 232; Ex parte Jones, 160 S. C., 63, 158 S. E., 134, 77 A. L. R., 235, 245; Oldroyd v. McCrea, 65 Utah, 142, 235 P., 580, 40 A. L. R., 230. It is a preventive process, rather than remedial, and will not be used as a process for the review and correction of errors and irregularities, 77 A. L. R., 247, note; and it will not be granted if a plain and adequate remedy in the ordinary course of law by appeal exists. El Reno Wholesale Grocery Co. v. District Court, 161 Okla., 72, 17 P. (2d), 478; Purdy v. Harris, 141 Okla., 239, 284 P., 874. Nor will the writ be issued where it is ineffectual, as where the matters and things sought to be prohibited have already been done, as in the case there before the court. In Busey v. Crump, 108 Okla., 73, 233 P., 714, 715, the writ was desired in a similar case. The court say: "So, upon the entire record, we are confronted with the novelty of the ap-

plication for a writ to prohibit something from being done which has already been done. This it is impossible for the court to do, for whatever confusion there may be among the decisions as to just when a writ of prohibition should be issued or denied, and however far the courts and text-writers may have fallen short in definitely defining just what facts constitute warrantable grounds for a writ to prohibit the doing of something which had not been done, yet it is obviously impossible for the courts to prohibit the doing of something which has already been done. Relief in such cases must be had through some other means."

█ In the case at bar the writ of prohibition was not applied for until after the decree of November 25, 1930, had been entered. That decree was final, and nothing more remained to be done; so, the writ, if issued, would have been wholly ineffectual. The county judge, in his answer, stated that the decree had already been entered, that the cause was ended before the application was made for the writ, that the proceedings were regular, that he did not intend to grant any further orders or decrees in the cause, and would not do so. So, the denial of the writ decided nothing with reference to the merits of the controversy, for the writ was properly denied, even if the petitioners were right in their contention that the order of August 11, 1930, and all the subsequent proceedings were coram non judice and void. The denial of the writs of prohibition was not res adjudicata.

█ The Supreme Court of Oklahoma has not in any reported case passed upon the question of the authority of the county judge to vacate or modify a final decree of distribution in an administration proceeding; and it is very earnestly insisted by appellant that it has not such authority in view of the provisions of section 1360 of the Compiled Statutes, 1921, which makes such decree "conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside, or modified on appeal." The Supreme Court of California, however, in construing an identical statute, held that the trial court did have such authority in Wiggin v. Superior Court, 68 Cal., 398, 9 P., 646. This was an application for a writ of prohibition against the judge of the superior court at San Francisco commanding him to desist from further proceeding in the matter of the estate of Hannah Murphy, deceased, upon the ground that the threatened action of the court was in excess of its jurisdiction. The facts were that one Wiggin was administrator of said estate, and on the 19th day of January, 1885, the court settled his account as administrator, and entered a decree of distribution of the property of the estate remaining in his hands. On January 26th, a decree of final discharge of said administrator was entered in the usual form. On January 27th, the court, on application of certain of the heirs of deceased,

entered an order setting aside and vacating the decree of discharge of the administrator upon the ground that it had been made "inadvertently and ex parte." On May 19th, the court issued an order for petitioner (the administrator) to show cause why he should not be adjudged in contempt for failing to pay certain moneys to the heirs, as ordered. The petitioner appeared and objected to the jurisdiction of the court, contending that by the decree of final discharge of January 26th the court lost all jurisdiction over the matter. The court say:

"The question turns upon the authority of the court to set aside and annul the decree of final discharge of the petitioner as administrator. If the court had jurisdiction to annul that decree, its authority to proceed in the cause as if no discharge had been granted . . . cannot be successfully contradicted. . . . If, on the other hand, the court lost all power by the decree of final discharge of January 26th, and had no jurisdiction for any cause to set aside and annul that decree, then its subsequent acts were coram non judice, and void. In a direct appeal from a judgment or order the recitals therein are not conclusive, and may be contradicted by other portions of the record. McKinlay v. Tuttle, 42 Cal. [570] 571. But in a collateral attack on a judgment of a court of superior jurisdiction the recitals are presumed to be correct, and every intendment will be indulged in its support. Drake v. Duvenick, 45 Cal., 455; Hahn v. Kelly, 34 Cal., 391 [94 Am. Dec., 742].

"As this is not an appeal from the order setting aside the decree of final discharge, but a collateral attack thereon, we must assume as true the statements contained in the order, which are that the decree of final discharge of the petitioner was made 'inadvertently and ex parte.' Has the superior court jurisdiction to set aside a decree thus made? We think the question mast be answered in the affirmative.

"We understand the rule of the common law, and of this state alike, to have been that a court of record having general jurisdiction was master of its entire proceedings, and, except as limited by some statute, could change, modify, amend, annul, and strike out therefrom such portions as it deemed necessary and proper to secure the ends of justice, so long as they remained in fieri; second, that when a case had proceeded to final judgment the court still retained power over, and could vacate, modify, or amend, it until the expiration of the term at which it was rendered; third, that upon the expiration of the term all power of the court over its judgments ceased, unless reserved by statute, or by some appropriate action on the part of the court itself. . . .

"Our constitution and Code have abolished terms of court, and the rules which formerly prevailed for the correction of errors and

irregularities cannot, as to time, be literally applied. By section 473 of the Code of Civil Procedure it is provided that most of the relief which formerly could only be granted before or at the term during which final judgment was rendered must be sought within a reasonable time, and in all cases within six months. . . .

"But independent of statutory provisions, we are of opinion the court has power to correct mistakes in its proceedings, and to annul, within a reasonable time, orders and judgments inadvertently made. To illustrate: suppose a judgment is taken upon a default prematurely entered, or a judgment is inadvertently entered in favor of defendant where it was intended to be in favor of plaintiff, or that for any one of a hundred reasons which might be supposed the court has accidentally or inadvertently entered orders or decrees not in consonance with its judgment or with law, and from which rank injustice must follow, can it be contended the court has no power, when within a day it discovers the mistake, to correct the error, and that the injured party must be remitted to an appeal for remedy? We think not. Where the judgment of a court has been deliberately exercised in a cause, and a final result reached as a conclusion thereof, there are good reasons why it should not be disturbed, except by the formal methods prescribed by statute; but rulings, orders, and even judgments inadvertently made are not the result of judgment, but of oversight, neglect, or accident, and are subject to correction by the judge or court making them. Hall v. Polack, 42 Cal., 218."

In Freeman on Judgments, section 194, it is said: "The power to vacate judgments was conceded by the common law to all its courts. Within its proper limitations it is a power inherent in all courts of record, and independent of statute. It may be exercised by the court either of its own motion, or on motion or suggestion by a party or interested person. . . . One rule, however, is undoubted. It is that the power of a court over its judgments, during the entire term at which they are rendered, is unlimited."

And, by analogy with our own procedure, since the county court in Oklahoma has no terms in administration proceedings, it seems reasonable that the decree of May 3rd, making final distribution of the estate, remained in the bosom of the court during the ten days allowed within which to perfect the appeal, and until the disposition of any motion filed within that time to vacate, modify, or correct it. We are of opinion, therefore, that the court acted within its powers in vacating it by the order of August 4th.

Another reason why the appellant will not now be heard to complain of the action of the county court in vacating the decree of May 3rd, and in permitting the executors to file a supplemental report, is that the jurisdiction and authority of the court to do so was challenged by a plea to the jurisdiction and motion to strike

the order of August 4, 1930, which was overruled by order of September 2, 1930, and from which no appeal was perfected. The jurisdiction of said court to enter the final decree of November 25, 1930, was also challenged in the motion for a new trial which was overruled on November 28, 1930, and no appeal was perfected from this decree. The Supreme Court of Oklahoma has held that a court of record has jurisdiction to pass upon a plea to its own jurisdiction, and its judgment in this regard, if unappealed from, is res adjudicata.

In McDuffie v. Geiser Manufacturing Co., 41 Okla., 488, 138 P., 1029, the fourth headnote is as follows: ''Determination of jurisdiction. The question of the jurisdiction over the defendant . . . was by said defendant directly put in issue by its motion to vacate and set aside the former judgment. . . . A hearing thereon being had, the motion was overruled, and the court's judgment became final. Held, in a subsequent trial between the same parties, concerning the same subject-matter, that the judgment so rendered was conclusive upon said defendant, and that the question of jurisdiction could not again be considered.''

And in the case of Fooshee v. Craig, 110 Okla., 189, 193, 237 P., 78, 82, the court said: ''We are not unmindful that the statute and the authorities hold that a void judgment may be vacated, either by proceeding in the cause in which it was rendered by motion or petition to vacate and set the judgment aside or by petition in equity, making proper showing, or if the judgment is void it may be ignored and attacked in any proceeding, but if the judgment is attacked by motion or petition to vacate in the original proceeding, on the ground that it is void, and the court acts upon the motion or petition and sustains the judgment, the judgment of the court, sustaining the former judgment, becomes res judicata as to the validity of the former judgment. If this were not true, there would be no end to litigation.''

In a note to section 1360 of the Oklahoma Compiled Statutes 1921, reference is made to the case of Calhoun v. Bryant, 28 S. D., 266, 133 N. W., 266, 269. The South Dakota statute is identical with that of Oklahoma, both having been adopted from the California Code. The Dakota decision is, therefore, pertinent. In that case the decree for distribution of the estate was entered on November 20, 1907. On June 26, 1908, a motion was made to vacate it; the defendants objected on the ground that the county court had lost jurisdiction; on April 17, 1909, the court overruled the defendant's objection to the jurisdiction, and defendant then resisted the motion on its merits, with the result that the court again sustained the motion, and vacated the judgment of November 20, 1907, and set a new date for the final hearing. No appeal was taken from the order vacating the decree. The court say:

"We may assume, though we do not decide, that the law did not give the court authority to vacate the decree, yet the court undoubtedly had authority to decide the questions presented by the motion arising between parties then present urging their respective contentions before the court. . . .

"The decree became and was vacated, in effect, by the order made by the court upon a motion which the court had jurisdiction to decide, with all the parties before it, in which ruling appellant acquiesced [by not appealing]. He cannot now be heard to allege that such decree was not vacated. By this proceeding and conduct of appellant the first decree became and was completely eliminated from further consideration, and the case stood as though no such decree had ever been entered. We hold that the court had jurisdiction to decide the question presented upon the motion, and that the failure of the defendant to appeal from the ruling constituted a complete waiver of any objection to the jurisdiction of the cour interposed at the hearing of the motion or elsewhere, and precludes this court from a consideration or determination of the question whether the probate court had or had not authority to vacate the decree."

Upon the strength of these authorities, we are constrained to hold that the order of September 2, 1930, overruling the appellant's plea to the jurisdiction of the court to enter the order of August 4, 1930, vacating the decrees of May 3, 1930, and the order of November 28, 1930, overruling its motion for a new trial, which again challenged the jurisdiction of the court to enter the final decree of November 25, 1930, are res adjudicata, because of the defendant's failure to appeal therefrom; and that by reason of its acquiescence therein, and its failure to appeal therefrom, we are now precluded from passing upon the question of the authority of the county court to enter said order of August 4, 1930, setting aside the decree of May 3, 1930.

The third and fourth assignments of error will therefore be overruled, and the decree of the chancellor dismissing the appellant's cross-bill will be affirmed. Let a decree be entered, therefore, dismissing both the original bill and the cross-bill, at the cost of appellees and their sureties.