BENSON v. ROZZELLE et al.

ROZZELLE et al. v. THIRD JUDICIAL DISTRICT COURT IN AND FOR SALT LAKE COUNTY et al.

Nos. 5624, 5561. Decided December 31, 1934. (39 P. [2d] 1113.)
Rehearing Denied February 13, 1935.

584

*E. A. Walton,* of Salt Lake City, for appellants.

*Romney & Nelson* and *R. J. Hogan,* all of Salt Lake City, for respondent.

MOFFAT, Justice.

This matter comes to this court upon two separate proceedings. There is an original proceeding upon which a writ of review was issued out of this court upon petition praying annulment of an order or decree of the district court of the Third judicial district of the state of Utah, county of Salt Lake, in the case of Dorothy C. Benson, plaintiff, against Joe W. Rozzelle and K. W. Yeates, defendants, whereby the trial court had ordered the defendants to account to the plaintiff. The return made in pursuance of the writ contains the judgment roll and a bill of exceptions duly settled. The appeal involves the same record. The appeal was perfected after the writ of certiorari was issued out of this court, lest the time for appealing should expire, before the matter was determined upon the writ, and in the event the determination upon the writ resulted in a final denial thereof, and the judgment of dissolution of the alleged partnership should become final, thereby cutting off the right of appeal and defendants be left with no remedy. The complete record being in this court, it was stipulated that the whole matter

might be heard and submitted to the court at one time, and that was done.

There are two controlling issues presented in these proceedings. One is presented on the appeal to the effect that there is no evidence whatever of a three-party partnership between the plaintiff and the defendants, and one upon the application for the writ of review to the effect that jurisdiction is lacking on the part of the trial court to enter judgment or make an order or decree requiring the defendants to account to the plaintiff with respect to the alleged three-party partnership.

The record discloses that Dorothy C. Benson, the plaintiff, filed her complaint in the district court on the 20th day of April, 1933, alleging in substance that she entered into a partnership with the defendants on or about June 30, 1930; that they were to share in the business one-eighth to the plaintiff, three-eighths to the defendant K. W. Yeates, and four-eighths to the defendant Joe W. Rozzelle; that the partnership was to engage in a general gasoline and oil distributing business; that at the same time the defendant Rozelle took possession of all the property and business and ever since said date has operated the business under the name of Joe W. Rozelle; that he has received and disbursed moneys; that the defendants have refused plaintiff access to the books and records, have refused to permit plaintiff to participate in the business at all, and have refused and still refuse to account to her. Among the items of relief prayed for are: Dissolution of the alleged partnership, appointment of a receiver, and that defendants be required to render an accounting.

After hearing the evidence, the trial court made findings of fact, conclusions of law, and entered a judgment of dissolution of the partnership, refused to appoint a receiver, and directed the defendants to render an accounting within fifteen days after the entry of the judgment of dissolution. Plaintiff had the burden of proving the existence of a partnership. If she failed in this, manifestly she was not entitled to any relief under the complaint filed,

no matter what other rights she might assert or claims she might otherwise have against the defendants.

We have examined the record carefully and any and all evidence tending to support the issue presented by plaintiff's complaint. Before stating the evidence it may be well to indicate a difficulty presented to the trial court. A demurrer had been interposed seeking to require plaintiff to set forth whether the alleged partnership agreement was oral or in writing. The demurrer was overruled, but as the trial proceeded, the trial judge sought to secure a statement from plaintiff's counsel for purposes of enabling him to rule upon the admissibility of evidence, whether the plaintiff claimed the agreement of partnership to be in writing or oral. Counsel was apparently reluctant to make a committal as to either proposition, but finally said it was partly oral and partly written. There is no evidence of any oral agreement of partnership between the parties to the action, nor does it seem possible the plaintiff could maintain any such claim.

Richard M. Benson, husband of and agent and witness for plaintiff, was present at the signing of an agreement between the defendants Yeates and Rozzelle on the 30th day of June, 1930, at the time of the alleged formation of the partnership, and it would seem that if plaintiff was a partner from the beginning such relationship must be found in the written agreement itself or by evidence of some oral or written agreement establishing such relationship. He was asked about the conversation that took place on that occasion. He stated:

"I can't remember the exact conversation, but Mr. Rozzelle handed this partnership agreement to Mr. Yeates and asked him to read it over and Mr. Yeates read it over and said it was all right. Mr. Yeates then let me look it over and Mr. Yeates and Mr. Rozzelle signed the agreement."

"Q. Was there any other conversation at that time? A. No. I don't think there was any other conversation."

The agreement referred to and about which the witness Benson was testifying was received in evidence as "Exhibit 1" and reads as follows:

"This agreement entered into by and between K. W. Yeates, of Salt Lake City, Utah, first party, and Joe W. Rozzelle, second party, witnesseth:

"The parties hereto have entered into a copartnership for the purpose of distributing gasoline and oil upon the following terms and conditions.

"1. A storage tank is to be erected at Odell switch on the Bamberger Railroad on the property of the second party, of approximately twenty thousand gallons capacity, for gasoline distribution; additional tanks may be erected if the increase in business justifies it.

"2. The necessary equipment for the delivery of gasoline and oil is to be purchased.

"3. The partnership is formed primarily to deliver gasoline and oil to the members of the Utah Garage Mens Association; however, its activities are not confined to this distribution exclusively, and it may do a general gas and oil distribution.

"4. A bank account is to be opened at Walker Brothers Bank under the name of Joe W. Rozzelle and all moneys paid into the hands of either partner are to be deposited in said bank and paid out by check signed by Miss C. E. Johnson.

"5. Each of the parties hereto have other enterprises in which they are interested and engaged; until mutually agreed neither party is to draw a salary, nor is the second party to receive any rental for storage tank space, nor office rent until mutually agreed upon.

"6. Any contract for the delivery of oil and gas to the members of the Utah Garage Mens Association will be in the name of the second party; first party hereto to be a silent partner to this agreement, but is to share equally with the first party in all profits arising from said partnership, and to share equally in all losses suffered.

"7. All expenses are to be shared equally, the necessary books of account to be kept open for inspection at all times by either party hereto. All current accounts to be paid promptly in order to take advantage of any cash discounts.

"8. Dividends may be declared quarterly.

"9. The funds of this partnership are to be used exclusively for the benefit of the business.

"10. Second party now owns and operates five retail gasoline stations, said stations are to be supplied with gasoline by this co-partnership at the same terms as the members of the Utah Garage Mens Association, except that said second party's gasoline is not to be delivered C. O. D., but is to be paid for at regular semi-monthly intervals.

"11. Each of the parties hereto are to at all times work for the best interest of the partnership. It is to continue until mutually dissolved, and in case it becomes necessary to settle a dispute between the parties hereto, it is to be done by arbitration, the expense pertaining thereto to be shared equally by the parties hereto.

"Signed in duplicate this 30 day of June, 1930.

"[Signed] K. W. Yeates
"Party of the First Part

"[Signed] Joe W. Rozzelle
"Party of the Second Part."

The plaintiff claimed that she paid $375 into the partnership for the alleged one-eighth interest in the partnership. There is no evidence that such was done in so far as Rozzelle was concerned at the time of the formation of the partnership evidenced by the above agreement. As to that matter, Mr. Benson testified that to the best of his knowledge the $375 was paid to Mr. Yeates. How it was paid will appear from the testimony of Mr. Yeates.

Some months after the signing of the partnership agreement by Yeates and Rozzelle on June 30, 1930, a conversation was had between Mr. Benson and Mr. Yeates. Relating that conversation, Mr. Benson testified:

"I asked Mr. Yeates, in view of the fact that Mrs. Benson had nothing in writing for her interest in this partnership of J. W. Rozzelle and K. W. Yeates, that Mr. Yeates give her something in writing to show her interest in this, for the reason that if anything happened she wouldn't have anything to show, and Mr. Yeates agreed to do this, and we immediately had those papers, Exhibits 2 and 3, drawn up in the office of the Superior Gas and Oil Company."

Exhibit 2 reads as follows:

"For One Dollar ($1.00), and other good and valuable consideration, I hereby assign, sell and transfer, to Dorothy C. Benson, her heirs beneficiaries and assigns, one equal quarter (¼) interest, in my one half interest with Joe W. Rozzelle, as covered by a certain agreement between Joe W. Rozzelle and K. W. Yeates, bearing date of June 30th, 1930, copy of same being attached hereto.

"[Signed] K. W. Yeates."

Exhibit 3 was a copy of the partnership agreement between Yeates and Rozzelle of June 30, 1930, hereinbefore set out as Exhibit 1.

Mr. Benson also testified that he was an accountant and at the request of Mr. Yeates furnished some forms for setting up the books of account of the partnership. As to the payment of the $375, Mr. K. W. Yeates when called as a witness for plaintiff testified:

"Q. Mr. Yeates, as a matter of fact you paid commissions received on gasoline, in which Dorothy Benson was to receive $375.00 to this Joe Rozzelle partnership? A. I paid Mr. Rozzelle a check of $1500.00 and took Dorothy Benson's share out of that to equal the commission check, I think, but I took some out each month—she wanted to carry it that way so I took it from the commissions to pay me for the amount.

"Q. And repaid yourself? A. Yes.

"Q. And that was the beginning of the inception of this partnership? A. It was shortly after the partnership was formed.

"Q. Whose check did you give to Mr. Rozzelle? A. My check, $1500.00."

The record further discloses that K. W. Yeates and Joe W. Rozelle on the 25th day of July, 1932, had an accounting of the partnership property and business and by agreement in writing dissolved their partnership and Rozzelle paid Yeates $3,000 for "all his interest of every kind and nature in the assets and properties heretofore belonging to the partnership." It is admitted that at the time of the sale of Yeates' interest in the partnership and its dissolution Rozzelle knew of the assignment by Yeates of a one-fourth of the one-half interest held by Yeates to Mrs. Benson. Her claim in this behalf is not set forth in the pleadings or is it an issue before us.

We think the evidence beyond any question shows that Mrs. Dorothy Benson was not a party, silent partner or otherwise, to the agreement of June 30, 1930, when the partnership was formed. A partnership agreement, like any other express contract, requires a meeting of the minds of the parties thereto. The evidence fails to dis-

close that Joe W. Rozzelle was advised that Dorothy C. Benson claimed an interest in the partnership at any time before he had notice of the assignment of the one-eighth interest as shown by the assignment of such interest by K. W. Yeates under date of January 10, 1931, which notice was not till some time in 1932, probably not long before the agreement of dissolution of the partnership of Yeates and Rozzelle of July 25, 1932.

There is no finding of fact by the trial court that there was an existing partnership between the plaintiff and the defendants. The finding relating to the partnership is a literal repetition of the allegation of the complaint, "that on or about the 30th day of June, 1930, at Salt Lake City, Salt Lake County, State of Utah, the plaintiff entered into a partnership with defendants, and each of them, under an agreement by the terms of which, among other things, the plaintiff and defendants were to share in the said partnership business and the profits thereof in the following proportions: One-eighth ($\frac{1}{8}$) thereof to the plaintiff herein, three-eighths ($\frac{3}{8}$) thereof to the defendant, K. W. Yeates, and the remaining four-eighths (4/8) thereof to the defendant Joe W. Rozzelle." When, however, we come to the judgment the language is:

"It is now by the court: ordered, adjudged and decreed that the said partnership be, and the same hereby is, dissolved."

It would be difficult to find language more definite and conclusive as to the termination of the partnership relation.

"From all final judgments of the district courts, there shall be a right of appeal to the Supreme Court. The appeal shall be upon the record made in the court below, and under such regulations as may be provided by law. In equity cases the appeal may be on questions of both law and fact; in cases at law the appeal shall be on questions of law alone." Const. Utah, art. 8, § 9. See, also, R. S. Utah 1933, 104-41-1.

This is a case in equity, and whether the case be considered upon the appeal or upon the application for a writ of review,

this court is called upon to examine the record. To attempt to frame a general definition of what is or is not a "final judgment" applicable to all cases possible to ▉▉ arise in practice would present an undertaking not easily accomplished. Many definitions have been attempted to define a "final judgment." Most of them are criticized as being either too specific or too broad in their terms. An interesting discussion of some of such attempts or definitions is found in the case of *Tucker* v. *Yell,* 25 Ark. 420, at pages 429-432. This court in the case of *Ketchum Coal Co.* v. *Pleasant Valley Coal Co. et al.,* 50 Utah 395, 168 P. 86, 89, approved what was said in the *Tucker* v. *Yell Case,* supra, and quoted and approved the statement: "A final judgment is not necessarily the last one in an action. A judgment that is conclusive of any question in a case is final as to that question," found in *Sharon* v. *Sharon,* 67 Cal. 196, 7 P. 456, 463, 635, 8 P. 709, and referred to the cases of *Bristol* v. *Brent,* 35 Utah 213, 99 P. 1000, and other cases as illustrative of the principle.

Many cases present dual or multiple situations wherein it is necessary to enter judgment on one or more matters that are final and appealable, whether or not other matters are treated as interlocutory and are reserved for further determination. An action for divorce, wherein alimony, property adjustments, and counsel fees are involved, presents such a situation. A mortgage foreclosure involving sale of property, or the appointment of a receiver, and a possible deficiency judgment, may involve similar principles.

The instant case, fundamentally by allegation but wanting in proof, charged the existence of a partnership and sufficient, if such existed, as to violation of partnership rights to warrant dissolution, and as ancillary relief prayed for the dissolution of the partnership, the appointment of a receiver, an accounting, and general relief.

While no money judgment has in the instant case yet been entered, and while the appointment of a receiver was denied, the procedure required by an accounting certainly contem-

plates the examination and valuation of defendants', especially Rozzelle's, property, and if the judgment of dissolution of the alleged partnership is valid, the court has the undoubted authority to enforce the judgment of dissolution by attachment or other process to take into custody property, allegedly partnership assets, and punish as for contempt for a failure or refusal to so submit property, records, or information to the court.

It would not be seriously argued that there was no right of appeal in a mortgage foreclosure until after final sale of the property, the making of the sheriff's return under an order of sale, and the entry of a deficiency judgment. A single illustration will suffice. A brings a suit upon a promissory note for $1,000 secured by a real estate mortgage. B defends and pleads payment in full. The court finds payment of $500 and enters judgment for $500, interest, costs, and attorney's fees, and orders foreclosure and sale as provided by law. Must B wait until his property is sold before he may appeal, or if a receiver has been appointed has he no relief from either situation if either alone creates a situation from which irreparable damage may result from the application of one remedy only?

A final order dismissing an action which puts one of a number of defendants out of court, or directing the sale of certain property, or declaring certain property subject to liens or other burdens, or directing a final disposition of funds in court or in the hands of a receiver, may destroy some of the fundamental rights, some of the most vital and important interests, yet there may be other parties, other equities, and other remedies to be considered, and the trial court may have exercised its judgment on only one of them.

It is not always easy to make an application of a given case to an instant case, or to include within or to exclude a given case from a general statement made in a given case. In the case of Oldroyd v. McCrea, 65 Utah 142, 162, 235 P. 580, 588, 40 A. L. R. 230, we find the following:

"Under our Constitution and statute an appeal lies only from a final judgment. This court in numerous cases has held that a judgment to be final for purposes of an appeal must dispose of the case as to all of the parties and finally dispose of the subject-matter of the litigation on the merits, or be a termination of the particular proceeding or action, or, as sometimes expressed, the case put out of court. *Watson* v. *Mayberry*, 15 Utah 265, 49 P. 479; *Standard Laundry* v. *Dole*, 20 Utah 469; 58 P. 1109; *Honerine Mining & Mill Co.* v. *Tallerday Steel Pipe & Tank Co.*, 30 Utah 449, 85 P. 626; *Winnovich* v. *Emery*, 33 Utah 345, 93 P. 988."

In the case of *Watson* v. *Mayberry*, supra, the question decided was that when a motion for a new trial has been duly made, the judgment becomes final for the purposes of an appeal when the motion for a new trial is overruled. *Standard Laundry* v. *Dole*, supra, was an action to compel an accounting and disclosure of profits from a purchaser of mortgaged premises at foreclosure, and to determine a right of redemption. It was held:

"An accounting is found necessary in the conclusions and decree, and no accounting was had. Until such accounting is had, the judgment is not final, and the controversy between the parties is not ended."

In *Honerine Min. & Mill Co.* v. *Tallerday Steel Pipe & Tank Co.*, supra, it was held that an order quashing the service of the summons, without dismissing the action, was not a final judgment from which an appeal might be taken. The case of *Winnovich* v. *Emery*, supra, was one arising in habeas corpus. Winnovich brought his action alleging wrongful detention by the sheriff of Salt Lake County, who was made defendant. The district court discharged the defendant. It was argued that a judgment in a habeas corpus proceeding was not a final judgment. It was, however, held that for the purpose of an appeal such judgment was a final judgment, that the proceeding was civil, and either party thereto had a right of appeal. In passing upon that phase of the case, an excerpt from the *Honerine Case*, supra, is quoted as follows:

"It is the termination of the particular action which marks the finality of the judgment. A decision which terminates the suit, or puts the case out of court without an adjudication on the merits, is nevertheless a final judgment."

It is then further said:

"The test of finality for the purpose of an appeal, therefore, is not necessarily whether the whole matter involved in the action is concluded, but whether the particular proceeding or action is terminated by the judgment."

In the case of *Kourbetis* v. *National Copper Bank of Salt Lake City (United States, Intervener)*, 71 Utah 232, 264 P. 724, it was held an appeal does not lie from a verdict of a jury without entry of judgment on the verdict. The case of *Oldroyd* v. *McCrea*, supra, and many others are cited.

From the foregoing discussion it must appear from the adjudications that in certain cases, and under special proceedings and particular circumstances, the court may enter a judgment or decree as to certain defendants or particular issues or affecting special property, while all ■ the equities as to other defendants, and different claims, even important claims as to other property, may be reserved for further consideration, yet as to the matters or parties particularly acted upon the determination may be final for purposes of appeal.

The controlling issue in the instant case was whether or not there was an existing partnership. The court found there was and dissolved the partnership. Without any evidence of a three-party partnership in which plaintiff had an interest, a finding of the existence of a partnership ■ vested in the court no power either to disssolve a partnership that did not exist or to order an accounting. The judgment of the trial court ordering dissolution of a partnership that did not exist was, although the judgment may be void, in so far as the issues of the case were concerned, on the partnership matter, a final judgment from which an appeal could be taken. It necessarily follows that, there be-

ing no partnership, the court had no jurisdiction to order an accounting. Whatever interest, if any, acquired by plaintiff by the assignment from K. W. Yeates or the value of it is not before us and no opinion is expressed as to that matter.

Respondent's motion to dismiss the appeal is denied. The judgment of the trial court is reversed. The motion to quash the writ of review is denied. Appellants in the one action and plaintiffs in the other to recover costs.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.