## MINERSVILLE RESERVOIR & IRRIGATION CO. v. ROCKY FORD IRR. CO.

No. 5763. Decided October 13, 1936. (61 P. [2d] 605.)

Rehearing Denied January 4, 1937.

284

*Cheney, Jensen, Marr & Wilkins,* of Salt Lake City, for appellant.

*J. H. McKnight and P. G. Ellis,* both of Salt Lake City, for respondent.

ELIAS HANSEN, Chief Justice.

In a suit brought in the district court of Beaver county, Utah, plaintiff sought a rescission of a contract between it and the Beaver County Irrigation Company, a corporation, which latter corporation, prior to the commencement of this action, transferred all its right, title, and interest in such contract to the defendant. After trial was had on plaintiff's complaint and defendant's answer thereto, the rescission was denied. Defendant appeals. Its assignments of error are primarily directed against the construction given by the trial court to the contract which forms the subject-matter of this litigation. Plaintiff has filed a motion to dismiss the appeal because (1) the decree appealed from is not properly described in the notice of appeal; (2) the decree which defendant seeks to have reviewed is not prejudicial to it; and (3) such decree is not a final judgment but is merely an interlocutory order of the trial court. Plaintiff further contends that in the event it is determined that an appeal is properly before this court, still the contract in controversy was correctly construed by the trial court. At the time (April 30, 1913) when the contract in question was entered into, plaintiff had certain decreed water rights in and to the waters of Beaver river in Beaver

county, Utah. Such rights of plaintiff were to divert water directly from the river and also to impound water in a reservoir which it owned. Defendant's predecessors in interest also had the right to the use of some of the water of Beaver river which it desired to impound in a reservoir. The contract in litigation was entered into to fix the water rights of the parties thereto and to enable defendant's predecessor to enlarge the reservoir so owned by plaintiff in order that additional water might be impounded therein. We quote such parts of the contract as are deemed material to this controversy:

"The grantor (plaintiff) * * * does by these presents grant, bargain, sell, convey, transfer, and set over unto the grantee (defendant's predecessor) subject, however, to the conditions hereinafter stipulated, all and singular the following described lands, waters, and water rights, to-wit:" (Then follows the description of certain specified water rights, lands and the reservoir.)

"The grantee hereby covenants that it will construct, operate, and maintain a dam and reservoir at or near the said Rocky Ford Dam of sufficient strength and capacity to impound among other waters, the seven thousand five hundred acre feet of water hereinafter referred to and which is to be, as herein provided, conveyed and delivered to the grantor. * * *

"The grantee covenants that it will construct and perpetually maintain and operate the said dam and reservoir and will acquire the legal right to impound in the said reservoir so constructed, among other waters, at least seven thousand five hundred acre feet of water annually and the grantor shall be entitled to an absolute, prior, first preferential right to the use of said seven thousand five hundred acre feet annually of said water so to be impounded in the said reservoir and the grantee further covenants that it will annually deliver from the said water so impounded in the said reservoir at the point in Beaver River at which the grantor now diverts water from Beaver River into its canal at which point of diversion the grantor has constructed and now maintains its diverting works, the said seven thousand five hundred acre feet annually, which water shall be delivered from time to time in such quantities as the grantor may from time to time during each year indicate; such water to be measured to the grantor through a proper weir or measuring device to be constructed in said canal at the intake thereof by the grantee, and the grantee shall construct and continuously maintain, at its own cost and ex-

pense, in the said Beaver River suitable works for the diverting of the said water through the said weir or measuring device into said canal.

"During the non-irrigation season of each year hereafter, which non-irrigation season is hereby defined to be the months of November, December, January, February, and March, the grantor shall be entitled to use so much of the water arising in said Beaver River between said Rocky Ford Dam and the said diverting works of the grantor as shall be reasonably necessary to supply its stockholders with water for domestic and culinary uses, not exceeding however, two cubic feet per second of water, and if during such non-irrigation season, such quantity of water shall not rise between the two said points then any deficiency shall be made up to the grantor from the waters in the said Rocky Ford Reservoir, but during the remainder of the said year, which is hereby declared to be the irrigation season, the said waters flowing into or arising in the said River between the said Dam and the said point of diversion shall be measured to the grantor as part of the seven thousand five hundred acre feet annually to be delivered to the grantor by the grantee as herein provided. * * *

"The grantee hereby covenants that it will continuously keep unencumbered the said seven thousand five hundred acre feet of water so annually to be delivered by the grantee to the grantor at the said point of diversion and any mortgages, trust deeds, or other conveyances of the grantee's water rights now owned or which hereafter may be acquired in Beaver River, or of its said dam and reservoir, shall be made subject and subordinate to the grantor's right to the use of the said seven thousand five hundred acre feet of water annually as herein set forth and to all of the grantor's rights provided for in this contract. * * *

"The conveyance by the grantor to the grantee of the water rights and property of every kind and nature mentioned in paragraph one and in all subdivisions thereof is on the express condition that the grantee shall commence the delivery to the grantor of the said seven thousand five hundred acre feet at the time herein specified for said delivery to be commenced and in case the grantee shall fail to commence the delivery of the said water at such time then and in that event, all of the said property so conveyed in the said paragraph one and all subdivisions thereof shall revert to and become and remain the absolute property of the grantor."

As the basis of its suit to rescind the contract, a part of which we have just quoted, plaintiff in substance alleged in its complaint: (1) That during the year 1928 defendant failed, refused, and neglected to clean the canal through

which water is conveyed to plaintiff's headgate; (2) that defendant has failed to construct the measuring device provided for in the contract; (3) that during a number of years since the execution of the contract defendant has failed to deliver to plaintiff the entire 7,500 acre feet of water and particularly during the year 1933 defendant delivered only 7,000 acre feet of water; (4) that defendant has, upon numerous occasions, failed and refused to perform its obligations under the contract, thereby making it necessary for plaintiff at great expense to itself to bring and prosecute actions for the enforcement thereof. Plaintiff prayed that the contract be rescinded, and that all of the property conveyed to defendant's predecessor be returned to plaintiff, and that defendant be perpetually enjoined from the use of the reservoir and the other property mentioned in the contract.

In its answer, defendant admitted the execution of the contract. It denied generally its failure to perform the obligations thereunder. It alleged that it had expended in excess of $1,000,000 in buying lands and constructing a reservoir and an extensive irrigation system for supplying water to lands in Milford Valley; that the reason the 7,500 acre feet of water were not delivered in 1933 was, not because of any default of defendant, but was caused by the state engineer preventing delivery of such water because plaintiff failed and refused to pay its assessments thereon. It prayed that plaintiff take nothing by reason of its complaint.

Upon the issues so raised by the pleadings, the trial court found: (1) that in 1928 plaintiff cleaned out a part of a canal which defendant was by the contract obligated to clean, but that such cleaning was not done at the request of the defendant nor was the defendant requested to clean the same; (2) that plaintiff installed a weir within about 300 feet of the point where defendant was by the contract obligated to construct a weir and that such weir so constructed by plaintiff was, by mutual consent of the parties

to this litigation, used for measuring the water which had been delivered to the plaintiff; (3) that during the year 1933 plaintiff was entitled to have delivered to it, pursuant to the contract, 497 acre feet of water more than it received; (4) that it was and is the duty of defendant to pay the assessments levied for the purpose of paying the water commissioner of Beaver river against the water to which plaintiff is entitled; (5) that defendant has been guilty of a number of minor breaches of the contract between its predecessor and the plaintiff; (6) that for two years after the water commissioner was appointed on Beaver river, the defendant paid assessments levied against plaintiff's 7,500 acre feet of water; (7) that defendant has expended in excess of $500,000 in acquiring land and water rights and constructing a reservoir and an irrigation system.

As conclusions of law the court held that it was the duty of the defendant to pay all expenses incident to the delivery of water at plaintiff's headgate and particularly all assessments levied against the 7,500 acre feet of water to which plaintiff is entitled for the purpose of paying the water commissioner; that "plaintiff is not entitled to a complete rescission of said contract"; that the judgment denying the rescission shall be contingent on the defendant's faithful performance of the contract in the future. The decree which is appealed from provides that:

"Rescission of the contract is denied on condition that the defendant comply with the provisions of the contract and especially to keep the amount of water specified in the contract ready for delivery, as specified in such amounts and at such time as directed by the plaintiff, and that such water be kept free from incumbrances, including the assessments levied for the purpose of paying the water commissioner. Plaintiff to have judgment for costs herein."

This cause may be disposed of without a statement of the evidence offered and received at the trial. In the main, the evidence is not in conflict. The findings of fact find

support in the evidence. For reasons presently to be discussed, however, it may be here observed that the remittance made by the defendant to the state engineer for the assessment of 1930 on the water to which plaintiff was entitled was accompanied by a letter which contained this statement: "We are also enclosing our check in your favor for $150.00 in payment of the amount of assessment to Minersville Reservoir & Irrigation Company, which we are paying this season for them, not as a precedent, however, for future seasons' charges." A similar statement was contained in the letter which accompanied the remittance made by the defendant to the state engineer in 1931 in payment of the assessment of the water delivered to plaintiff during that year. Evidence was offered on behalf of defendant that it paid the assessment in order to avoid any controversy between it and plaintiff as to who was obligated to pay the assessments during the time a suit was pending which had for its purpose the adjudication of the rights of water users on Beaver river, in which suit plaintiff and defendant had a common interest. In one of its findings, the court below found that it was the duty of defendant to pay the assessments on the water to be delivered to plaintiff. Such so-called finding involves a construction of the contract here brought in question and as such it is not properly a finding of fact but, in reality, a conclusion of law.

There is no merit to the attack made by respondent on the sufficiency of the notice of appeal. It is in the usual form. It designates with particularity the judgment appealed from and recites that such judgment "is in favor of the plaintiff and against the defendant." Respondent contends that the judgment appealed from is not in favor of the plaintiff and against the defendant. It is for that reason, and that reason alone, that respondent urges the notice of appeal is fatally defective. Whether the judgment is or is not in favor of plaintiff and against defendant involves an examination and determination of the

merits of this controversy. The notice of appeal fully served its purpose—that of informing the defendant of the particular judgment that was appealed from. Our State Constitution (article 8, § 9), provides that,

"From all final judgments of the district courts, there shall be a right of appeal to the Supreme Court."

Thus, the sole test of the right to appeal depends upon whether a judgment is or is not final. The question of whether or not a particular judgment is or is not prejudicial to the party appealing requires an examination of the record on appeal. If, upon such examination, no prejudice is shown, the proper order is to affirm the judgment and not to dismiss the appeal. Nor may it be said that the decree or judgment here brought in question is interlocutory. It was final in that a rescission of the contract was denied. It was likewise final in that the contract in controversy was construed. It was in effect, adjudged and decreed that it was and is the duty of the defendant to keep the water to which plaintiff is entitled unencumbered and to pay assessments levied against such water right "for the purpose of paying the water commissioner." Plaintiff was also awarded costs, but as no cost bill was filed we need not be further concerned with that part of the decree. At the trial the parties were fully heard and the cause disposed of upon its merits. Nothing is said in the decree to the effect that the court retained jurisdiction for further proceedings. The statement in the decree that the rescission of the contract "is denied on condition that defendant comply with the conditions of the contract," etc., cannot reasonably be construed to mean that the court intended to make any other or different judgment than that actually entered. In the absence of a pleading setting forth some facts occurring after the cause was submitted and determined, the court below could not properly make any further judicial inquiry with respect thereto. What we conceive to be the proper construction of the judgment or decree ap-

pealed from is that the trial court on the showing made denied a rescission of the contract and at the same time construed it to mean that the defendant must pay the assessments levied against the 7,500 acre feet of water which under the contract is to be delivered annually to the plaintiff. That was the principal question litigated at the trial. That question was decided against the defendant. So far as made to appear, the cause was finally disposed of and the rights of the parties as to the facts presented to the court finally determined by the decree entered. Such decree is a final decree within the constitutional provision heretofore quoted in this opinion, and hence defendant is entitled to appeal and to a review thereof by this court. *Standard Steam Laundry* v. *Dole*, 20 Utah 469, 58 P. 1109; *Honerine Min. & Mill. Co.* v. *Tallerday Steel Pipe & Tank Co.*, 30 Utah 449, 85 P. 626; *Winnovich* v. *Emery*, 33 Utah 345, 93 P. 988; *Bristol* v. *Brent*, 35 Utah 213, 99 P. 1000; *State ex rel. Neilson* v. *Third Jud. Dist. Court*, 36 Utah 223, 102 P. 868; *Oldroyd* v. *McCrea*, 65 Utah 142, 235 P. 580, 40 A. L. R. 230; *Kourbetis* v. *National Copper Bank*, 71 Utah 232, 264 P. 724; *Benson* v. *Rozzelle*, 85 Utah 582, 39 P. (2d) 1113. The motion to dismiss the appeal is denied.

No one is here complaining because the court below denied plaintiff a rescission of the contract which plaintiff sought to have rescinded. In light of such fact, no useful purpose will be subserved by a review of the adjudicated cases and other authorities cited by the parties touching the question of when a contract may and when it may not be rescinded. The most that may be said of the decree under review is that it contained an intimation or threat that unless the defendant complied with the contract in litigation such contract would be rescinded. We are not warranted at this time in attempting to lay down rules with respect to what breaches of the contract, if any, will, and what breaches will not, work a rescission thereof.

The only question properly before us for review is: Does the contract involved in this litigation cast upon the defen-

dant the duty of paying the assessment levied for the payment of the water commissioner against the 7,500 acre feet of water per annum to which the plaintiff is entitled? That the state engineer may hold plaintiff to the payment of such assessment is not open to serious doubt. It is provided in R. S. Utah 1933, 100-5-1, that:

"Whenever in the judgment of the state engineer, or the district court, it is necessary to appoint a water commissioner for the distribution of water from any river system or water source, such commissioner shall be appointed annually by the state engineer, after consultation with the water users. * * * The salary and expenses of such commissioner shall be borne pro rata by the users of water from such river system or water source, upon a schedule to be fixed by the state engineer, based on the established rights of each water user, and such pro rata share shall be paid by each water user to the state engineer in advance on or before the 1st day of May each year."

Plaintiff is a water user of Beaver river and as such is clearly liable to the state engineer for the payment of its pro-rated share of expenses incident to the services rendered by the water commissioner. Plaintiff may not escape that liability to the state engineer so long as it remains a water user. The right of the state engineer to collect assessments from the water user cannot be defeated by an attempt of the water user to assign its liability for the payment thereof to another. The burden of the liability is not so easy to escape. If it were, all of the water users of a stream or other source of supply might assign their liability to pay water assessments to some irresponsible person and thus render collection impossible. It will be noted that some of the language used in the contract here brought in question indicates that the water rights therein specified were granted, bargained, sold, and transferred by plaintiff to defendant's predecessor. The conveyance, however, was made subject to the conditions mentioned later in the contract. By such later provisions plaintiff reserved to itself "an absolute, prior, first preference right to the use of said seven thousand five hundred acre feet annually of said water so to be impounded in said reservoir,"

etc. That plaintiff by the contract conveyed all of its right to the use of the water mentioned in excess of 7,500 acre feet per annum is clear. In light of the fact that it retained an absolute, prior, and first preference right to the use of 7,500 acre feet per annum of the water to be impounded in the reservoir it is difficult to perceive wherein plaintiff, by the contract, parted with any of its title to that quantity of water. Under our law,

"The water of all streams and other sources in this state, whether flowing above or under the ground in known or defined natural channels, is hereby declared to be the property of the public, subject to all existing rights to the use thereof." R. S. 1933, 100-1-1.

Prior to the execution of the contract, plaintiff merely had a right to the use of certain waters of Beaver river. After the contract was executed, it had the same kind of title to the use of 7,500 acre feet per annum as it had before. All that the contract did with respect to title and plaintiff's right to the use of water was to fix the quantity to which plaintiff was entitled as against defendant's predecessor. The state of Utah was not a party to the contract. The rights of the public in and to the waters covered by the contract were in no way affected thereby.

This brings us to a consideration of the question of whether or not by the language used in the contract, defendant's predecessor obligated itself and its successors in interest to pay assessments levied against plaintiff's water right for the purpose of paying the salary and expenses of ■ the water commissioner. At the time the contract was entered into, the provisions of R. S. 1933, 100-5-1, hereinabove quoted, had not become law. Such provisions were enacted in 1919. Laws Utah 1919, c. 67, § 62, p. 197. The law has been amended since its original enactment but the amendments do not bear upon the controversy in the instant case. Water commissioners, however, were not infrequently appointed by the courts in connection with water litigation prior to the time the contract in question was entered into. The primary purpose of a water commissioner is to

assist the court in carrying out its decrees. His duties are to aid the courts and the state engineer in the distribution to the various water users of the quantity of water to which each is entitled. The commissioner is an arm of the court and the state engineer in enforcing and protecting the various water users in their rights. He is appointed by the state engineer upon recommendation of the interested water users. The state engineer may remove him for cause upon an application of a water user and a hearing had thereon. The same power inheres in the court under which he serves. R. S. 1933, 100-5-1. Plaintiff, being a water user of Beaver river, has the same right to the service of the water commissioner as have other water users. The state engineer and the district court of Beaver county, acting through the water commissioner, have the authority and the duty to see that plaintiff receives the water to which it is entitled as against the defendant, as well as against all of the other water users of Beaver river. The mere fact that under the terms of the contract in question defendant is required to construct and maintain a reservoir and necessary measuring device, clean out a part of plaintiff's ditch, etc., does not relieve the water commissioner of his duty to see that plaintiff receives its proper proportion of the water of Beaver river. The relation existing between plaintiff and defendant under the contract in controversy is quite unlike the relation existing between a stockholder in a corporation and the corporation itself. It may readily be conceded that a water commissioner is without authority to interfere in the affairs of a corporation to the extent of distributing water belonging to the corporation to its stockholders. Unlike the stockholders of an irrigation corporation, whose right to the use of water is derived through the corporation, the plaintiff's right in this case is an independent and different right than that of defendant. The authority and duty of a commissioner to distribute water to one or more users holding the right to the use thereof does not cease merely because one of them has undertaken to maintain

a means of storing and conveying such water to the place of use. If such a construction were given to the law it would, in many instances, fail in its purpose.

With these observations in mind, let us revert to those provisions of the contract upon which plaintiff relies for its claim that the defendant's predecessor agreed to pay the assessments levied by the state engineer on the water to which plaintiff is entitled. The specific language of the contract so relied upon by plaintiff is:

"The grantee (defendant's predecessor) covenants that it will continuously keep unincumbered the said seven thousand five hundred acre feet of water so annually to be delivered by the grantee to the grantor."

It is plaintiff's contention that an assessment made by the state engineer on its water right is an incumbrance thereon or when not paid becomes such within the meaning of the contract. The defendant contends to the contrary. Each of the parties have cited cases and texts dealing with incumbrances. We have examined these cases and texts but find them of little aid to us in the present inquiry. Generally speaking an "incumbrance" is a burden or charge on property. In a sense an unpaid water assessment becomes an incumbrance against the water right when the state engineer refuses to deliver the water because the assessment is not paid. R. S. 1933, 100-5-1, vests in the state engineer, in the event the assessments are not paid, authority to "forbid the use of water by any such delinquent while such default continues," or he may bring an action in the district court for unpaid expenses and salary, or the district court, having jurisdiction of the person, may issue an order directing a delinquent user to show cause why a judgment for such sum should not be entered against him. If the language relied upon by plaintiff is given the broad meaning contended for, it would follow that the defendant would be obligated to pay an incumbrance placed on its water right by the plaintiff itself. That such was not the intention of the parties is not open to doubt. If we are correct in the view heretofore

expressed in this opinion that plaintiff owes a duty which it may not escape to pay the state engineer the assessment levied against its water right, it follows that plaintiff may not be heard to complain when its property becomes incumbered because of its failure to perform that duty. Of course, if the contract casts upon defendant's predecessor the duty of paying the assessment, plaintiff could justly complain if it were not paid. It, however, is difficult to believe that at the time the contract was entered into the parties thereto had in mind that if, perchance, the Legislature at some future time should pass a law such as R. S. 1933, 100-5-1, then and in such case the burden thereof with respect to plaintiff's water right should fall upon the defendant. To find that the parties to the contract had in mind such an intention and that they contented themselves by expressing it by a provision that defendant's predecessor should keep plaintiff's water right free from incumbrances is contrary to human experience. It is, however, urged that defendant by paying two assessments has admitted its liability to continue to pay the same. There is a well-established rule of law that when the terms of a contract are ambiguous the construction placed thereon by the parties is given weight in determining what the parties intended. Under some circumstances the construction placed on an ambiguous contract by the parties is of controlling importance. In the instant case the fact that the defendant informed the state engineer that the payment of the assessments on plaintiff's water right was made "not as a precedent for future seasons' charges" tends to weaken, if not destroy, the applicability of that rule. The defendant was not a party to the original contract and, hence, so far as appears was not advised as to the negotiations had nor the intention of the parties thereto, except as such intention is expressed in the contract. No question of defendant being estopped from denying liability to pay assessments on plaintiff's water right enters into this case. As far as appears, plaintiff was not injured but benefited by defendant paying the two assessments.

From what has been said, it follows that the court below was in error in concluding and in entering a judgment to the effect that defendant is obligated to pay the assessments levied against the 7,500 acre feet per annum of the water right of plaintiff. The judgment in that respect is reversed. This cause is remanded to the district court of Beaver county, with directions to amend its findings of fact, conclusions of law, and decree to conform to the views herein expressed. This being an equity case in which the parties are seeking a construction of the contract brought in question, we conclude that no costs on appeal should be allowed either party. Such is the order.

FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.

WOLFE, Justice (concurring).

The opinion stands on the three propositions: (1) The contract of April 30, 1913, among other things purporting to transfer water rights, was in effect a transfer of the reservoir of the plaintiff to defendant so the latter could enlarge it to store its water with the obligation to store 7,500 acre feet of plaintiff's water and deliver said water to plaintiff. The part of the contract conveying to defendant plaintiff's water rights and then reserving a prior right to the use of 7,500 acre feet left the plaintiff and defendant in exactly the same position as they were before the contract was made regarding title to the water rights, because plaintiff only could have a use right under the laws of the state, and after it conveyed such right and then took back the prior use right, it had as regards the use right, after the contract, what it had before. (2) The obligation to pay the assessment for the water commissioner's services is against the one having the use of the water and he is primarily liable. (3) Since there was really no change in the status of the parties to the contract as regards the title to use right to the 7,500 acre feet of water, and the plaintiff owns afterward as it did before, title to the use right in this

quantity of water it could not have been contemplated by the provision reading that defendant would "keep unincumbered the said seven thousand five hundred acre feet of water" that defendant should pay a charge primarily owing by plaintiff on its own water which might be an incumbrance and thus keep plaintiff's water right unincumbered from incumbrances permitted to rest against it by failure of plaintiff itself to pay charges owing by it.

I agree to these three propositions. I also agree that the motion to dismiss the appeal should be denied because I think there was a final judgment saddling on defendant the duty of paying the water assessments for the water commissioner. That could not be any more final as to that duty. The fact that injunctive relief is refused on conditions may by inference mean that it will be granted on failure to perform the conditions but the decree with its conditions constitutes a final judgment. Because some time in the future the court may try the issue as to whether a condition has been performed, no more prevents the judgment from being final than a decree of divorce involving alimony prevents such decree from being appealable. Although in the future the court may have to try the issue as to whether the alimony has been paid.

I assume that by the language used in the opinion that the "sole test of the right to appeal depends upon whether a judgment is or is not final," it is not meant to foreclose the question as to whether this constitutional provision was meant to preserve to a litigant at all events, free from interference by the Legislature, a right of appeal from final judgments, leaving the Legislature, or perhaps this court by rules, power to give a right of appeal in other cases where the judgment is not final or whether it was meant to restrict at all events the right of appeal only to final judgments. As far as this opinion is concerned, I assume that question to be open and do not concur in any interpretation which would close that question.

Language is used in the opinion as follows: "Unlike the stockholders of an irrigation corporation, *whose right to the use of water is derived through the corporation*," etc., (italics mine), I am at this time not willing to concur in the idea that the rights of stockholders to an irrigation corporation are derived through the corporation where the stockholders owned water rights previous to the formation of the corporation and conveyed these rights to the corporation purely as a convenient and cooperative means of distribution and management. It may be—I am not prepared to say—that such stockholders' rights are derived from rights more fundamental and deeper than by or through the corporation. I think the statement in the opinion susceptible of two interpretations. By my concurrence I do not wish to be tied to any particular interpretation of this statement.